# CHARLESTON.

### ANDERSON v. ANDERSON.

## Submitted March 28, 1916.   Decided April 4, 1916.

1. APPEAL AND ERROR—*Pleading—Demurrer—Assignment of Grounds.*
     Section 29, chapter 125, serial section 4783, Code 1913, respecting failure to assign grounds of demurrer, does not apply to equity causes.   (p. 119).

2. DIVORCE—*Pleading.*
     A bill for divorce on the ground of adultery, specifying the person with whom the alleged act of adultery was committed, and also the time and place, is not bad on demurrer for failure to allege other circumstances of the alleged offense.   (p. 119).

3. SAME—*Burden of Proof.*
     In suits for divorce as in other civil causes the burden is upon the plaintiff to make out his case by clear, positive, and satisfactory evidence.   (p. 123).

4. SAME—*Sufficiency of Evidence.*
     In this case the evidence of the adulterous acts alleged was not sufficient to support the decree *a vinculo matrimonii* appealed from.   (p. 120).

Appeal from Circuit Court, Summers County.

Suit by G. W. Anderson against S. E. Anderson. From a decree for plaintiff, defendant appeals.

*Reversed and bill dismissed.*

*T. J. Lilly* and *T. G. Mann,* for appellant.

*E. C. Eagle,* for appellee.

MILLER, JUDGE:

In a suit for divorce, by husband against wife, upon the ground of adultery, divorce a vinculo was decreed and defendant has appealed.

The first point of error is that the demurrer to the bill should have been sustained. Grounds of demurrer do not seem to have been assigned in the court below, and none are specifically assigned here, further than to refer the court to the Virginia case of *Miller* v. *Miller*, 92 Va. 126, 23 S. E. 232. Counsel for plaintiff answer this point by saying that under our statute, section 29, chapter 125, no grounds being assigned, the demurrer was properly overruled, and that the same can not be considered upon appeal. But the provision of the statute relied on, as several times decided, does not apply to equity causes. *Hays* v. *Heatherly*, 36 W. Va. 613; *Cook* v. *Dorsey*, 38 W. Va. 196; *Depue* v. *Miller*, 65 W. Va. 125, 126; *Wm. James Sons* v. *Farley*, 71 W. Va. 173.

Looking to the Virginia case cited, and guessing at the point or points relied on, as we have to do, it must be that the charge or charges of adultery are too general, and that the time, place, and circumstances of the alleged acts of adultery are not set forth in the bill.

The bill does contain the general charge that defendant had been guilty of adultery with several men, "most of whose names are to the plaintiff unknown," time, place and circumstances not specified. But it also contains specific charges of adultery (1) in Hinton, West Virginia, with one Goodall, on or about August 1, 1910, and which the bill alleges was then confessed by both; and (2) in the city of Avis, West Virginia, with one Ellison, on or about June 15, 1914, and on various other occasions before and after that time. No other circumstances of these alleged acts of adultery are alleged. In our case of *Trough* v. *Trough*, 59 W. Va. 464, the question whether such certainty in the pleadings is required was mooted by Judge BRANNON, but not decided, because the demurrer was general and two grounds, adultery and desertion, being alleged, and as desertion was sufficiently pleaded, the court held the bill good on demurrer.

While the circumstances of the alleged acts of adultery

are not set out in the bill with much certainty, we think the bill good on demurrer. The Virginia case of *Miller* v. *Miller, supra,* it seems, has been severely criticised. See 4 Enc. Dig. Va. & W. Va. Reports, 746. Moreover, the case of *Wood* v. *Wood,* 2 Paige 113, cited as authority for the holding in that case, does not seem to support the proposition to the full extent claimed. It says, ''the adultery must be charged with reasonable certainty as to time and place.'' True, it is also said that ''If they are unknown, that fact should be stated, * * * * and the time, place, and circumstances under which the adultery was committed should be set forth.'' We think the bill in this case answers every requirement of good pleadings in such cases, and that the rule of the Virginia case is too technical. The substantial facts being alleged the circumstances may be developed by the evidence.

The next point of error is that the alleged acts of adultery are not supported by the weight and preponderance of the evidence, and that the decree is for this reason erroneous. This point, we think, well founded in law and fact. The answer of defendant fully and completely denies every material allegation of the bill constituting grounds for relief, thereby putting the plaintiff on proof of his charges.

With regard to the charge of adultery with Goodall, alleged to have occurred some six years before the present suit was brought, the evidence shows that shortly after that time plaintiff brought a suit against defendant, for divorce for alleged adultery with this man, a minister. He relies on an alleged confession of his wife at that time. He seems never to have prosecuted his former suit, but abandoned it, and she positively denies the fact of adultery, and the confession claimed to have been in writing was not produced or accounted for. And afterwards plaintiff and defendant continued to live and cohabit with each other as man and wife, she conducting an ice cream shop or parlor in the basement of their dwelling house, and in or adjoining which her son also had a tailoring or cleaning and pressing shop, and the plaintiff a barber's chair, where he did some work at barbering. Section 10, chapter 64, serial section 3645, would of course deny to plain-

tiff a decree of divorce on the ground of adultery with Good-all, even if the fact was proven.

As to the alleged acts of adultery with J. L. Ellison, on June 15, 1914, and "at divers other times before and after that date," positively denied by defendant in her answer and in her sworn testimony, there is not a particle of proof, except the unsupported evidence of a colored woman named Toney, who at one time, for about six months, lived with plaintiff and defendant, and whom the evidence now shows to be a lewd and lascivious person, if not the keeper of a house of prostitution, and whose evidence is impeached as unworthy of belief by nine or ten witnesses, and not a witness offered by plaintiff in support of her reputation for truth and verac-ity. The only specific date of any act of adultery with Elli-son is alleged to have been on June 15, 1914. This witness gives no dates, her evidence is that they occurred while she was living with plaintiff and defendant, "about three years ago." She was testifying in August, 1914. So her evidence does not support the specific act charged to have been commit-ted on or about June 15, 1914. Moreover, the circumstances detailed by her, in our opinion, render her story highly in-credible. Defendant's son, a young man, was living at home, and, according to her story, defendant and Ellison occupied a bed in plaintiff's home, openly and in the witness' presence, at a time when they were liable to be overtaken by the hus-band or son. And other facts and circumstances shown in the evidence, we think, render her testimony to say the least in-credible and unworthy of belief. Besides Mrs. Anderson's denial, Ellison denies the charge and brands the evidence of the Toney woman positively false and as not having the slightest foundation in fact. An attempt was made to show by the Toney woman that defendant was also guilty of adul-tery with one L. D. Ellison, not specifically alleged in the declaration, while the Toney woman was living with plaintiff. This accusation was also positively denied by defendant, and was characterized by L. D. Ellison as "every word of it a lie." Besides, the parties lived and cohabited together as man and wife years after this alleged occurrence.

Plaintiff attempted to prove by his own testimony and the

evidence of three other witnesses, Stephenson, Hawkins, and Smith, meetings between defendant and J. L. Ellison, in the day time and in the night time, at Ellison's store, adjoining or across the alley from the residence and place of business of plaintiff and defendant, the one most relied on is said to have occurred on a Sunday morning in the basement of plaintiff's residence after 7:30 o'clock, and witnessed by plaintiff and by his witness Stephenson, by the former's procurement, looking through a window. Their story is that defendant and Ellison met on this morning and that she was seen to lie down on her back on a coat, and that Ellison was in the act of stooping down over her when a noise from the outside drove him away and out of the building. Ellison and Mrs. Anderson positively deny this story, and Stephenson is impeached as unworthy of belief by numerous witnesses, including his own father, who in effect says he would not believe him on oath. The fact that this occurred on a Sunday morning, while plaintiff was at home, and actually observing it with Stephenson through a window, and who does not claim to have made any resistance, renders the story very incredible. While Stephenson in his direct evidence says Mrs. Anderson on this occasion laid down on her back, on cross examination, says: "No sir, she didn't lay down, she was sitting down on a coat. I guess it was a coat. It looked like one." But this is not all, Ellison, supported by two other witnesses, denies that he was in defendant's house at the time sworn to, and proves that he left home on that morning before the hour named, and was not in town at any time during the day of this alleged occurrence.

Ellison was a merchant doing business on the same street and across the alley-way from plaintiff's and defendant's residence and place of business. Each had occasion to patronize the other, and most of the suspicious facts and circumstances relied on are explained by the parties and their witnesses as incident to their dealings with each other, as merchant and customer. Plaintiff seems to be a man of considerable property, but is evidently of a jealous and suspicious disposition, and inclined to find fault in his wife at every turn, and was prone to magnify every suspicious circumstance in connection

with her dealings with Ellison.  What the actual facts are we of course know nothing, except what may be legally gleaned from the record, but we do not think a case had been proven by the preponderance of the evidence, to entitle plaintiff to a decree of divorce.

True, as argued, it is not necessary, as in criminal cases, to make out the case beyond a reasonable doubt, but it is necessary for the plaintiff to prove his case by a preponderance of the evidence, and this we are satisfied he has failed to do. While some of the cases say not much weight ought to be given to the denial of the defendant and particeps criminis, when the circumstantial evidence is full and satisfactory, nevertheless, other cases say that the facts and circumstances must be such as to lead a reasonable and just man to the conclusion of guilt.  The evidence must be clear, positive, and satisfactory.  And 2 Bishop on Marriage, Divorce and Separation, section 1350, says: "Scandal and an adulterous reputation, however distinctly shown, will not suffice."  In this case numerous witnesses give Mrs. Anderson a good name, prove her to be a church member, and of good repute, except for the charges preferred against her by her husband.  In the recent case of *Huff* v. *Huff*, 73 W. Va. 330, third point of the syllabus, we said: "Though circumstantial evidence is admissible and sufficient to prove adultery in a suit for divorce, it must be so clear and strong as to carry conviction of the truth of the charge, and, if it does no more than raise a suspicion of chastity, it is insufficient."

Upon these and other considerations presented by the record we are of opinion to reverse the decree and dismiss the bill, with costs to appellant in this court and in the circuit court herein expended.

*Reversed and bill dismissed.*