JOHN HURLEY *v.* MADLYN HURLEY

(No. 9675)

Submitted April 25, 1945. Decided June 12, 1945.

*John J. Hamrick,* for appellant.
*Thomas West,* for appellee.

RILEY, JUDGE:

In this suit for divorce defendant, Madlyn Hurley, appeals from a decree of the Circuit Court of Wayne County, awarding plaintiff, John Hurley, an absolute divorce and striking the cause from the docket.

The bill of complaint alleges, among other things, that about five months prior to the bringing of suit defendant, without any cause or justification, became dissatisfied and commenced a systematic course of conduct, having as its purpose the forcing of plaintiff to leave her or drive him to do her some personal violence, in order that she might obtain a divorce from him; that because of physical infirmities he was unable to protect himself against the personal violence which she continually threatened and which, on occasions, was inflicted, such as shoving him down, striking him in the face with her fist, drinking intoxicating liquors to excess, and threatening him with other men; that she had circulated reports in the neighborhood that he was mentally unbal-

anced in an effort to have him adjudged a lunatic for the purpose of getting control of his property; that she swore out a peace warrant on which he was arrested; that she so behaved herself toward plaintiff that he became afraid to live longer in the same house with her; and that on the 16th day of May, 1944, he separated himself from her and obtained other living quarters.

On June 26, 1944, defendant filed an answer and cross-bill, denying all the material allegations of the bill of complaint charging cruelty, alleging acts of cruelty on the part of plaintiff, and praying that the bill be dismissed for lack of proof, and that she be decreed separate maintenance. On July 12, 1944, plaintiff filed an answer denying defendant's charges of cruelty and praying that he be granted the relief prayed for in his bill of complaint. On the same day another paper designated "Plaintiff's Amended and Supplemental Bill" was filed seeking to have the marriage between plaintiff and defendant declared null and void, and averring that it had come to plaintiff's knowledge that defendant was not eligible to contract marriage with plaintiff by reason of a former marriage to one Frank Horack, from whom she was never legally divorced; that the papers, pleadings and decree in the Common Pleas Court of Cuyahoga County, Ohio, (contained in an exhibit filed with the amended and supplemental bill) are insufficient to effect a dissolution of the alleged former marriage of defendant. In the final decree in the instant suit the court dismissed the amended and supplemental bill and awarded plaintiff a divorce on the allegations of his original bill.

The amended and supplemental bill of complaint has no place in this suit. It prays for an annulment of the marriage between plaintiff and defendant which presupposes the existence of a void or voidable marriage, whereas the bill of complaint prays for a divorce which presupposes the existence of a valid marriage and is based upon a different statute than the annulment statute. The two positions cannot be asserted in the same suit. A party in the same suit or series of suits cannot take inconsistent positions in reference to the same fact or state

of facts. *Watkins* v. *Norfolk & Western Railway Co.,* 125 W. Va. 159, 163, 23 S. E. 2d 621; *Moran* v. *Leccony Smokeless Coal Co.,* 124 W. Va. 54, 62, 18 S. E. 2d 808; *Litz* v. *First Huntington National Bank,* 120 W. Va. 281, 197 S. E. 746; *Atlantic Bitulithic Co.* v. *Town of Edgewood,* 114 W. Va. 243, 171 S. E. 754. Here the plaintiff notwithstanding he took inconsistent positions by his pleadings, elected to rely upon the bill of complaint alone as he produced no evidence tending to support the allegations of the amended and supplemental bill.

Plaintiff and defendant were married on January 22, 1943, the parties then being seventy-two and fifty years of age, respectively. This was plaintiff's fourth marriage, his third wife having died shortly before his marriage to defendant. He is the owner of several houses in Ceredo, West Virginia, in one of which he had lived for fourteen years preceding the bringing of this suit. He testified that he received a net income from these properties of approximately fifty dollars a month, and that about four thousand dollars could be realized on them at a forced sale. Plaintiff also receives a pension of sixty-seven dollars a month from the Norfolk and Western Railway Company. Defendant has no property in her own right.

For a month or two immediately preceding his marriage to defendant, plaintiff had been very ill and a neighbor, Mrs. McCoy, was hired to care for him. During this illness defendant and her sister rented a room in plaintiff's house, but after the marriage defendant's sister moved to other quarters. The record discloses that plaintiff has been more or less incapacitated by gland trouble, which affected his body, feet and limbs. On an occasion prior to the marriage plaintiff fainted at the head of the stairs, and defendant, who is apparently a strong woman in good health, assisted him to his room.

For the first few months of their marriage, the parties apparently lived together without discord. During that period plaintiff had taken out insurance on defendant's life, but made no disposition of his property. He testified that defendant was wont to go out late at night with

men and return in a drunken condition with her clothing torn; that she threatened him with these men; that on other occasions she would lock herself in a room for several days at a time; and that she called his third wife vile names. He further testified that on one occasion he told defendant that she should be ashamed of herself, that she requested him to repeat, which he did not do, and that she then, with an oath, shoved him against the table, broke his glasses, grabbed a pistol from the table, knocked over a chair and then struck him with her fist; and that due to defendant's superior strength he was unable to resist her. These happenings occurred "immediately before suit". Later plaintiff, finding himself "locked out of the house", prepared to enter by an upstairs bedroom window, in which, according to defendant, she, her sister and brother were at the time. Defendant's brother testified that he was hailed by his sisters as he was passing the house; that he saw plaintiff outside the house when he went in, and that he next noticed him coming up a ladder with a "wrecking bar" in his hand; that he reached down and took the bar from plaintiff and placed it under the bed covers, and that he then assisted plaintiff through the window. Plaintiff testified that the "wrecking bar" was a ten-inch chisel with which he intended to pry the window open; that he did not tarry in the house but went downtown, returning in about an hour. In the meantime defendant procured a peace warrant for plaintiff, and an officer had arrived, who arrested plaintiff. Later he was arraigned before a justice of the peace and found guilty. At the time this suit was pending in the circuit court an appeal had been taken to that court from the judgment of the justice, which remains undetermined. After his arrest, plaintiff moved to another house, while defendant remained in the dwelling house where the parties were living when the separation occurred.

Plaintiff further testified that men were accustomed to peck at the windows of the house late at night; that defendant told various persons in and about Ceredo that he was mentally unbalanced; and that defendant's atti-

tude toward him was such that he was afraid she would poison him. Defendant says that plaintiff accused her falsely of living with another man, to whom she was not married, for a number of years prior to her marriage to plaintiff. But the records of the Common Pleas Court of Cuyahoga County, Ohio, disclose that defendant was awarded a divorce from one Frank Horack, and that the marriage dissolved by the decree of that court was a common law marriage under the laws of the State of Ohio.

Plaintiff introduced the testimony of a number of witnesses to the effect that his reputation in the community in which he lived was that of a law-abiding citizen, and that he was a person of quiet demeanor.

Defendant testified that plaintiff made several attempts on her life; that on one occasion shortly before December, 1943, he threatened her with a poker and a knife, and on another occasion locked her out of the house. She denies she became intoxicated, threatened plaintiff with other men and called plaintiff's third wife vile names. Defendant does not, however, specifically deny that she committed the other acts of cruelty charged in the bill of complaint, and that she went out with other men. She admits that she locked plaintiff out of the bedroom on the day of his arrest, and that she caused him to be arrested for a breach of the peace, the merits of which charge as yet remain undetermined. Several witnesses testified, and defendant admits, that she told a number of persons in the community that plaintiff was unbalanced and should be confined.

The testimony as to plaintiff's good character does not constitute corroboration within the meaning of Code, 48-2-11. It is, however, admissible, and tends to disprove defendant's charges that plaintiff was guilty of violent conduct toward her and that he is an ill-tempered person. Plaintiff's testimony that defendant treated him with statutory cruelty stands substantially uncontradicted in this record. Such testimony standing alone, of course, would not entitle plaintiff to a divorce in the absence of corroboration, but this record is not without substantial corroborative evidence. The charge contained

in the bill of complaint that defendant told various persons that defendant was mentally unbalanced and should be declared insane is fully sustained by testimony independent of that of plaintiff. Likewise the charge that defendant had plaintiff arrested for a breach of the peace, a matter still undetermined, is admitted in this record, as well as the fact that defendant locked plaintiff out of the house on the day of his arrest. She said that on that occasion she was in fear of her life, a matter which plaintiff denies, but in view of the trial court's finding we think that her charge in this regard should not be accepted and that being so the locking of plaintiff out of his home was unjustified and constitutes an act of cruelty. Where cruelty upon which a party seeks to ground a divorce consists of "successive acts of ill-treatment, it is not necessary that there should be direct testimony of other witnesses to every act sworn to by the plaintiff * * *." *White* v. *White,* 106 W. Va. 680, pt. 3 syl., 146 S. E. 720. On the other hand, there is a substantial conflict in the evidence on the question whether plaintiff was guilty of cruel treatment of defendant. Likewise this conflict has been settled by the finding of the trial court, and should not be disturbed by this Court. The trial court having heard the testimony of the witnesses and observed their demeanor on the witness-stand, it is the best judge of the weight and credibility of the evidence. The finding, in our opinion, is not clearly wrong or against the preponderance of the evidence, and the decree of the circuit court should be affirmed. In a divorce suit "a trial chancellor's finding of fact will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence." *Crouch* v. *Crouch,* 125 W. Va. 331, 334, 20 S. E. 2d 169, 171.

*Affirmed.*