MARGARET K. BROWN

v.

IVAL HENRY BROWN

(No. 10785)

Submitted January 9, 1957. Decided May 7, 1957.

*J. W. Maxwell,* for appellant.

*Ned H. Ragland,* for appellee.

DUCKER, JUDGE:

This is a chancery suit instituted on March 17th, 1953, in the Circuit Court of Raleigh County, West Virginia, by Margaret K. Brown, seeking a divorce from Ival Henry Brown. A final decree was rendered on July 30th, 1955, granting a divorce to the plaintiff, to which decree defendant prosecutes this appeal, and for convenience, the parties will be referred to herein as plaintiff and defendant, respectively.

The plaintiff, in her original bill of complaint, prayed for a divorce on the grounds of physical violence and mental cruelty, and alleged in support of such mental cruelty the intemperate use of intoxicating liquors by the defendant. To this bill, the defendant answered with a general denial of the allegations of the original bill, and by way of affirmative relief praying that he be granted a divorce, charged cruelty on the part of the plaintiff. The plaintiff thereafter filed an amended and supplemental bill setting up the same charges as in the original bill, together with additional allegations of the statutory ground of habitual drunkenness on the part of the defendant; to this amended bill the defendant filed an answer of general denial and set up the charge of cruelty and desertion and praying for affirmative relief; at this point apparently the original pleadings were superseded by those bringing in new matters. The case had been previously referred to a commissioner and evidence taken before the commissioner, at which time it was learned and partially developed, upon cross-examination of the plaintiff, that the plaintiff had administered nembutal tablets to the defendant, without the latter's knowledge; and such fact was alleged in the defendant's second and supplemental answer as a basis for affirmative relief to the defendant. Upon these pleadings, the testimony taken before the commissioner and the recommendation of the commissioner, the Court granted plaintiff a divorce from the bonds of matrimony, custody of the children, alimony and support aggregating the sum of $550.00 per month, $2350.26 for dower in the de-

fendant's lands, decreed all of such sums, accrued or future, as liens upon the defendant's property, both real and personal, whether now owned or subsequently acquired, and dismissed the defendant's answer in the nature of a cross-bill.

As the record in this case is extremely voluminous, we can only summarize and recite its most pertinent details.

The plaintiff was born December 25, 1910, and the defendant March 3, 1908; they lived while in their teens in Huntington, West Virginia, where they went to school and became acquainted, and the plaintiff and her family later moved to Richmond, Virginia. The defendant was graduated from dental college in Atlanta, Georgia, in June, 1935, and plaintiff and defendant were married in Richmond, Virginia, June 10, 1935. The defendant worked in a dental office in Huntington for a time, later undertook the practice of dentistry in Marlinton, West Virginia, but no home was established there. Late in 1937 or early 1938, plaintiff and defendant lived in Lewisburg, West Virginia, where defendant endeavored, without much success, to practice his profession, and the plaintiff was employed there in welfare work and the most of their subsistence was as a result of her employment, in which she continued until 1947. In 1940, defendant accepted employment in the dental office of Dr. W. W. Watts in Beckley, West Virginia, where he worked until his induction in 1942 into the army, in which he served four years, returning to Beckley after his discharge in 1946. In the meantime, Dr. Watts had died and defendant, upon his return to Beckley, purchased the business and equipment of Dr. Watts from the latter's estate. Defendant was very successful in his practice in Beckley, paying off dental equipment purchase notes in a few months, established a dental practice which produced a net income ranging from $23,217.10 in 1948 to $37,347.72 in 1952. Defendant acquired, out of his earnings, realty of the value of $59,400.00, personal property of the approximate value of $7500.00, three annuity insurance policies in the amount of $15,000.00. There were

born to this marriage two female children on January 10, 1949, named Peggy and Betsy Brown.

The evidence of the plaintiff details incidents of intoxication and the treatment of the defendant in several institutions beginning in 1937 or 1939, with treatment by Dr. Reeser in the State Hospital at Huntington and the C. & O. Hospital, Clifton Forge, Virginia; in March, 1939, the St. Albans Sanitarium, Radford, Virginia; in November, 1939, the Raleigh General Hospital, Beckley, West Virginia; and in December, 1939, the St. Albans Sanitarium and then some eleven years later, the St. Albans Sanitarium in May, 1950, and again in March, 1951. There is evidence, including that of two doctors, that the defendant indulged in the excessive use of alcohol, one of whom saw him twice, once when he was asleep and once when he was sober, and the other doctor who saw him on three occasions when defendant was under the influence of intoxicants to the point where he needed assistance. There is testimony that the defendant was brought home once in a taxicab in such condition as to require assistance from the taxicab to his residence. Several people testify to this, and whether to the same occasion or different one is not clear. With little or no corroboration, the plaintiff testified to frequent intoxication of the defendant, that he neglected his business, that he remained away from home on numerous occasions, that he cursed and abused her, threatened to strike her, and on one occasion, did strike her; that on several occasions, for these reasons, she was compelled to leave her home and go to her father's home in Beckley.

Plaintiff's witnesses testified that in June, July and August, 1953, the defendant on six different occasions spent from four to seven or eights days each at the Mountain Air Rest Home at Beckley and that to some extent, defendant had been drinking prior to such occasions, although there is evidence that defendant was not then drunk but was worried and depressed and needed rest and sleep. Also, in the summer of 1953, there is evidence that on several occasions defendant

was drunk while he lived at the Arlington Hotel in Beckley, and that on one occasion there was a woman named Betty Davis in defendant's room under circumstances which plaintiff claimed sufficiently indicated and proved adultery with her by defendant. All this evidence relates to events which occurred after the institution of this suit.

In 1947, plaintiff came from Lewisburg to Beckley where these parties established a home, first in an apartment and subsequently in a residence which defendant had had constructed at 200 Wickham Avenue, where they last lived and cohabited. That from 1940, when defendant worked for Dr. Watts, through 1946, when he returned to Beckley from the army, the defendant testified he had experienced no difficulty with intoxication; that beginning in 1947 or 1948, he began again to have this difficulty. The plaintiff, upon coming to Beckley in 1947, took over some work in defendant's office, such as ordering supplies and drugs, keeping records and writing the checks; that the plaintiff, admitting she had learned in Lewisburg in 1939, from a local doctor, an appropriate dose of nembutal for a person recovering from intoxication, ordered, during the period embracing September 1949 to February 1952, from the Huntington Drug Company, some four hundred of such one and one-half grain nembutal tablets, in addition to possibly fifty tablets which she took from the supply cabinet in the office, that upon the arrival of each shipment of such tablets, she took them to their home, admittedly for the purpose of giving them to her husband, and that she did give nembutal tablets to her husband, without his knowledge and without medical direction; that concerning the use of nembutal, Doctor T. U. Vermillion testified that it is a sedative drug, which is a barbituric acid derivative, that if taken frequently or in sufficient quantites, is an hypnotic, that normally the effect of such drug will wear off in twenty-four to forty-eight hours, that if used with whiskey, the effect would be more immediate and powerful, that while the drug is useful to persons recovering from intoxication, if used

constantly, it will create a desire for whiskey, that the drug is habit forming, that the longer a person uses it, the more pronounced is the effect, and that continued use of it would cause hysteria.

The defendant testified that in 1951 his difficulty became progressively worse, that he was seized with severe stomach pains, with loss of equilibrium, the freezing of his hands on dental instruments, that in walking he lifted his feet high off the ground, that he now believes his difficulty was the continued administrations to him of nembutal which resulted in his hospitalization, and which caused him to believe he had sundry ailments, including a brain tumor. There is evidence that on the last trip he made to St. Albans Sanitarium, defendant worked until 5:30 P.M. on that day, and the testimony of his office personnel was that he had not been drinking, and that by 9 o'clock that evening, after he had gone home, his wife and father-in-law had sent him to the hospital at Radford in care of Fletcher Carter, the taxicab driver, who stated that he did not smell whiskey on the defendant, but that he was in a bad condition.

Plaintiff laid considerable stress upon absences of defendant from his office, claiming that such absences were inferentially and necessarily due to drunkenness on the part of the defendant. It appears from the records of the defendant's office that in the year 1952, the defendant was absent approximately fifty three days. Defendant's witnesses testified that defendant's absence on approximately nineteen or twenty of such days was on account of attendance by defendant at dental association meetings or on business of some nature.

The defendant assigns thirteen errors to the decree of the Circuit Court of Raleigh County, some of which may be stated together, as follows:

First: That the final decree of July 30, 1955, is erroneous in granting the plaintiff a decree of divorce, because, (a) the decree is contrary to the law and the facts, neither cruelty nor habitual drunkenness having

been established by that degree of proof required by law; (b) plaintiff's testimony in support of the facts of physical cruelty, is not corroborated, either by attending circumstances or corroborating witnesses, and, (c) the evidence in support of the charge of habitual drunkenness offered by the plaintiff, is uncertain, equivocal, and overcome by the great preponderance of the parol testimony and the physical facts;

Second and third: That the granting of exclusive custody of the children to the plaintiff, a person, who according to the defendant's theory of the evidence, is unfit to have such care and custody, was erroneous;

Fourth: That relief should have been denied the plaintiff because her inequitable conduct was the cause of this suit;

Fifth, sixth, seventh and eighth: That erroneous and arbitrary awards of alimony and maintenance of the children of $550.00 per month and $2350.26 in discharge of dower rights, and expressly making these amounts, accrued or future, liens upon defendant's real and personal property, now owned or hereafter acquired, as being punitive, unwarranted and unsupported by the law or facts;

Ninth: That the decree is erroneous in dismissing defendant's answer and cross-bill praying for affirmative relief, and denying the defendant a decree of divorce upon the showing of cruelty because the great preponderance of the evidence discloses that the plaintiff secretly practiced the poisoning of the defendant over a period of many years, in such a manner that the same was greatly detrimental to his peace, happiness, welfare and health, and presented imminent danger to his life;

Tenth: That the court erred in its failure to award to the defendant the custody of the children; and

Eleventh, twelfth and thirteenth: That the court erred in adopting the report of the commissioner because the same is unwarranted under the law, goes beyond the

scope of the decree of reference and the law permitting the decree of reference, and in awarding the commissioner a fee of $1500.00 as excessive, and to the awarding counsel for the plaintiff a fee of $3000.00, the same being excessive.

The plaintiff, while maintaining and insisting that the decree is correct to the full extent of its provisions, assigns three errors, namely, (1) in refusing to unqualifiedly find the defendant an habitual drunkard; (2) in refusing to hold the installments of alimony and support money to be obligations of defendant's estate after death, and, (3) in refusing to deal with defendant's paid up annuity policies so as to build a fund to insure the education of the infant children.

There are actually two main issues and two secondary issues presented in this case. The main issues are: (1) The charge of cruelty and habitual drunkenness made by the plaintiff against the defendant; and, (2) the charge of cruelty made by the defendant against the plaintiff, relying upon the secret administration by plaintiff to him of nembutal drugs.

The secondary issues are: (1) Whether the plaintiff is barred of relief because of inequitable conduct or want of clean hands; and, (2) whether the defendant is barred from relief because of recrimination, the charge of adultery with one Betty Davis.

Except for the questions of the propriety of the award of the custody of the children, of the allowances of counsel fees to the attorneys, and of fee to the Commissioner in Chancery for his services, this case requires first a decision as to whether the plaintiff is entitled to a divorce from the defendant or whether the defendant is entitled to a divorce from the plaintiff. Other or collateral questions must depend principally, if not wholly, upon the decision of this main issue. The Commissioner in Chancery recommended that the plaintiff be given a divorce from the defendant on the grounds of cruel and inhuman treatment and habitual drunkenness. The circuit court

approved the findings and recommendation of the Commissioner, and so decreed a divorce in favor of the plaintiff.

The well settled rule in a divorce or other chancery proceeding is that unless the decision of the trial chancellor is clearly wrong or against the preponderance of the evidence, it will be affirmed. *Crouch* v. *Crouch,* 124 W. Va. 331, 20 S. E. 2d 169; *Hurley* v. *Hurley,* 127 W. Va. 744, 34 S. E. 2d 465; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594; *Gaymont Fuel Co.* v. *Price,* 138 W. Va. 930, 79 S. E. 2d 96. So, the question here is whether the evidence in this case does or does not sustain such a view, and for such a determination we must review the evidence, and in so doing, we can hardly give more than the conclusions as to what has been proved. A detailed narration of the evidence other than what has been hereinbefore given is, in view of the extremely lengthy record in this case, neither practical nor necessary.

The plaintiff relies in her charge of cruelty on one incident where defendant struck or raised his hand to strike her, which was only corroborated in part by a maid in their home, on defendant's habitual drunkenness producing such a mental state on the part of the plaintiff as to destroy her health and happiness, on defendant's having made on one or more occasions statements relating to her religious denomination and to her chastity, on the accusation by defendant that plaintiff was addicted to the use of narcotics, and that the defendant went to Reno, Nevada, for the purpose of obtaining a divorce from plaintiff. While the charges of cruelty and habitual drunkenness in the bill of complaint and the amended bill of complaint are alleged as separate grounds for divorce, yet in reality, the plaintiff has relied on proof of habitual drunkenness as sustaining her charge of cruelty. Most probably such position is taken because of plaintiff's realization or fear of insufficiency of other proof. Unless the plaintiff has sufficiently proved habitual drunkenness on the part of the defendant, she is not

entitled to a divorce, as we are of the opinion that the other evidence in regard to cruelty is not sufficient. The real issue in the case is then whether the plaintiff has proved that the defendant was guilty of habitual drunkenness within the meaning of the statute as contained in Code, 48-2-4, as amended by Chapter 35, Acts of the Legislature, 1935.

The law on this question is laid down in point 2 of the syllabus, *Kessel* v. *Kessel*, 131 W. Va. 239, 46 S. E. 2d 792, in which it is said: "In a bill for divorce, where the bill alleges habitual drunkenness as a ground therefor, proof that defendant occasionally became intoxicated from drinking intoxicating liquors does not establish the allegation of habitual drunkenness within the meaning of Code, 48-2-4, as amended by Chapter 35, Acts of the Legislature, 1935; to sustain such charge it must appear that the drunkenness has become a fixed habit, so frequently indulged in as to show an inability to control the appetite for intoxicating drink, when opportunity is afforded to procure the same."

The evidence offered by the plaintiff, which is, in many respects, contradicted by evidence offered by the defendant, is substantially as follows: That in 1936 defendant was seen frequently drinking or drunk by one Grace Freilieb when the plaintiff and defendant lived at Lewisburg; that in 1939 defendant was in several hospitals which treated alcoholics; that once in 1948 the odor of alcohol was detected on defendant, his clothes disheveled and he needed a shave; that in 1949 defendant was drunk; that from 1951 to 1953, the defendant, at various times but apparently not periodically or continuously, was seen drunk or under the influence of liquor; that in 1953, after the institution of this suit, and after plaintiff and defendant separated, defendant was seen on several occasions drunk or drinking while he lived at the Arlington Hotel in Beckley; that because defendant had been drunk or drinking he was a patient or guest at the Mountain Air Rest Home in Beckley on six different occasions in June, July and August,

1953, which was based on the testimony of Dr. John P. Heagarty, who, while saying that the defendant was an habitual drunkard, admitted that he only saw defendant there twice, once when defendant was asleep and again when defendant was sober. There is some testimony that whiskey was seen in the room of defendant at the Arlington Hotel. Plaintiff's father also testified that while he had an apartment across from the residence of defendant, on six different occasions between 1948 and 1953, he saw the defendant in such state of intoxication as to require physical assistance from an automobile to the front door of defendant's residence.

While there is apparently no contradiction of plaintiff's evidence that from the records in defendant's office defendant was absent from his office for fifty-three days during the year 1952, nineteen or twenty of which days were, as testified to by defendant's witnesses, accounted for by defendant's attendance at dental association meetings and on other business, the evidence of plaintiff that such absences on the part of the defendant were due to defendant's drunkenness is not satisfactorily corroborated or convincing.

Defendant's evidence refuted the claim of plaintiff that defendant was guilty of habitual drunkenness, defendant himself testifying that after he learned that plaintiff had been giving him nembutal tablets, the condition which appeared to be drunkenness was the effect of the nembutal tablets which had been administered to him secretly by the plaintiff. Several witnesses testified that they had known defendant well for many years, and that they had never seen him under the influence of liquor. Defendant's evidence also showed that on several occasions to which plaintiff's witnesses testified that defendant was drunk, he was not drunk but was having difficulty walking and was in a bad physical condition, that they did not smell whiskey on him and did not know what was wrong with defendant, and further that the defendant had difficulty in the use of his hands, eyes and legs, resulting, according to defendant, from the nem-

butal tablets given to him by the plaintiff. From 1942 to 1946 defendant served in the United States Army, but nothing appears in the record as to the conduct of defendant during that period. From 1948 through 1953, a period of some six years, analysis of the evidence discloses only sporadic and widely separated incidents of drinking or drunkenness on the part of defendant, although the plaintiff, with little or no corroboration, testified as to considerable drinking or drunkenness on the part of the defendant. Even if it were admitted to be true that the defendant was drunk on the numerous occasions testified to by the plaintiff's witnesses, such occasions are so widely separated, as to time, as not to justify a conclusion that defendant was unable to control his appetite for intoxicating drink when the opportunity was afforded him to procure it, particularly in view of the fact that the defendant was exceedingly prosperous and successful in the practice of his profession to the extent of a net income, after taxes, of $23,217.10 to $37,347.72, during the years immediately preceding the institution of this suit. It is almost inconceivable that a person who was an habitual drunkard would have the financial capacity to produce such earnings by his own personal professional services.

We cannot disregard the evidence of defendant to the effect that he believed that what appeared to be intoxication on his part was the effect of the nembutal tablets which the plaintiff administered to him. However innocent the plaintiff may have been when she first learned of the use of nembutal, and of her desire with the knowledge which she had obtained in regard to such drug, to administer it to the defendant for the purpose of helping him, she was not justified in continuing to administer it to the defendant without his knowledge or consent. In view of the testimony of several doctors as to the effect of such drugs, we believe that no one could have failed to realize that the defendant must have suffered from such effect, and the plaintiff, by her conduct in this respect, became such a party to such an un-

fortunate situation between the parties as to contribute to the causes of this frustration on the part of both of them, and affords a basis of the claim of defendant that plaintiff has not come into court with clean hands, and has been guilty of inequitable conduct.

In a divorce case, as well as in any suit in equity, the plaintiff must not be guilty of inequitable conduct and must come in with clean hands, otherwise this Court will refuse to grant the plaintiff the relief sought. *Hall* v. *Hall,* 69 W. Va. 175, 71 S. E. 103; *Maxwell* v. *Maxwell,* 69 W. Va. 414, 71 S. E. 571; *Edwards* v. *Edwards,* 106 W. Va. 446, 145 S. E. 813; *Cottle* v. *Cottle,* 129 W. Va. 344, 40 S. E. 2d 863; *Rohrbaugh* v. *Rohrbaugh,* 136 W. Va. 708, 717, 68 S. E. 2d 361.

As has been noted, a large part, if not the larger part of the evidence tending to prove drunkenness on the part of the defendant, occurred after the institution of this suit. Although ground for divorce must have occurred before the institution of a suit, the course of conduct of the defendant can be shown as having continued up to the date of the hearing. Evidence of facts occurring after the institution of the suit, however, is admissible upon the issue of the custody of children involved or affected.

We do not believe it amiss to make a special observation as to two other phases of this evidence. If the defendant had become an habitual drunkard, it seems only reasonable that in the community in which he lived that there would have been many witnesses obtainable who could have positively testified to such fact, and the plaintiff would not have had to rely upon greatly disconnected incidents or occasions when or upon which plaintiff asserts that defendant was drunk or drinking. Furthermore, it does not seem reasonable that the plaintiff, after admitting having acquired so many nembutal tablets, did not produce or otherwise explain what became of those not used. Such failure to produce some such positive evidence gives some credence to the defendant's claim. The defendant testified that his bad

physical condition was the result of, or the effect produced by, the nembutal, but he is without proof as to how many or at what times the same were so given to him, and consequently his evidence falls short of what is necessary for him to maintain his claim. The defendant has by his conduct, including a questionable episode with one Betty Davis, proved himself sufficiently guilty of misconduct or inequitable conduct as to preclude him from being entitled to a divorce from the plaintiff.

So, from the facts as proven in this case, we are of the opinion that the plaintiff has not sufficiently proved that the defendant was guilty of such cruelty or of habitual drunkenness as entitles her to a divorce, and that defendant has not sufficiently proved cruelty and inhuman treatment on the part of the plaintiff to entitle him to a divorce. The findings of the trial chancellor awarding plaintiff a divorce from defendant is, in our opinion, clearly wrong, and in such respect, must be set aside.

As to the question of the allowances of fees to the attorneys for the plaintiff and to the Commissioner in Chancery for their respective services, even though not now appealable and reviewable here, we are of the opinion that the circuit court's decision as to these allowances, having been a question within the sound discretion of the trial court, and appearing to be reasonable considering the lengthy record and proceedings, should not be disturbed. The decrees fixing such amounts are appealable, *Blacksheare* v. *Blacksheare*, 111 W. Va. 213, 161 S. E. 27; *Slater* v. *Slater*, 118 W. Va. 645, 191 S. E. 524; *MacCorkle* v. *Bouchelle, Judge*, 132 W. Va. 409, 416, 52 S. E. 2d 233, 237; *Hartman* v. *Hartman*, 132 W. Va. 728, 733, 53 S. E. 2d 407, but no appeal having been taken within the time required by statute, they are not reviewable now by this Court, *Gaymont Fuel Co.* v. *Price, supra.*

Our decision on the principal questions as hereinbefore stated necessarily cancels any right on the part of the

plaintiff to alimony, rights and liens upon the property of the defendant, and to custody of the children and the decree of the Circuit Court of Raleigh County of July 30, 1955 is vacated insofar as it grants a divorce to the plaintiff from the defendant and awards alimony, property rights and custody of children to plaintiff, and is affirmed as to denial of divorce to defendant from plaintiff; and this cause is remanded to the Circuit Court of Raleigh County for proper proceedings in conformity with this decision and the principles herein stated.

*Reversed in part;*
*affirmed in part;*
*and remanded.*