MAX J. GOLDMAN

*v.*

LAZETTE T. GOLDMAN

(No. 12079)

Submitted September 26, 1961. Decided November 28, 1961.

*Savage, Goshorn, MacCorkle & Rippetoe,* for appellant.

*Roy S. Samms, Jr., B. J. Pettigrew, Jr.,* for appellee.

BROWNING, JUDGE:

This is an appeal from an order of the Circuit Court of Kanawha County wherein it reversed a final decree of the Domestic Relations Court of that county granting to the plaintiff, Max J. Goldman, an absolute divorce from the defendant, Lazette T. Goldman.

Plaintiff filed his original bill of complaint in the Domestic Relations Court of Kanawha County on January 6, 1954, alleging the marriage of the parties in October, 1949, their separation in December, 1953, and charging the defendant with various acts and conduct, which allegedly seriously impaired the health of the plaintiff, and which, if sustained, would amount to cruel and inhuman treatment. Defendant answered, denying any misconduct on her part, and asked for affirmative relief, on the ground of cruelty, against the plaintiff, charging him with much the same acts and conduct as he had alleged against her. In August, 1954, plaintiff obtained an order enjoining defendant from molesting plaintiff either personally or in and about the conduct of his business and profession.

In April, 1955, plaintiff, by petition, requested the Court to hold defendant in contempt for violation of the provisions of the injunction in that she had repeatedly telephoned him and had visited his office, disparaging him to his patients. No disposition as regards this petition is shown by the record. Thereafter, in August, 1955, defendant filed a plea of condonation and the issue raised thereby was referred to a commissioner in chancery but apparently no evidence or proof was taken at that time.

On March 8, 1956, plaintiff filed an amended bill of complaint, upon which process was issued, which, in addition to the charges contained in the original bill, admitted that the allegation of condonation was "largely true" and that plaintiff had attempted a reconciliation with defendant but that after such condonation, if any, defendant had promptly resumed her un-

seemly conduct and again indulged in the use of intoxicants to excess, harrassed him in the practice of his profession by visiting his office and creating scenes, had called him by telephone at all hours of the day and night and had called his employers late at night and sought his discharge. Defendant answered the amended petition, again alleging the condonation, and denying the charges of cruelty on her part.

On June 29, 1956, plaintiff again requested the Court to cite the defendant for contempt for ''continuing to harrass and bother him, and the defendant in the late hours of the night has made a telephone call to the President of the County Court of Kanawha County, West Virginia, and attempted to get this petitioner discharged from his position as County Doctor of Kanawha County; . . . .'' Defendant answered, denying any violation of the injunction, and the disposition is not shown by the record.

The first testimony taken in the case was on September 11, 1956. Plaintiff testified that he was a physician, 77 years of age, having a small private practice and was also employed by the county and federal governments. He testified that: defendant, on several occasions, in a fit of anger, had cursed him with vile epithets and particularly on one occasion when they were entertaining guests, after which she ordered him out of the house; this happened early in 1953; while their relationship was usually peaceful and calm, defendant would frequently, without provocation, curse and abuse him for his failure to purchase or provide a home in a location which she deemed suitable; defendant was addicted to alcoholic liquors and would not stop at a ''highball'' but would get drunk; on several occasions plaintiff would come home to dinner to find dinner cooked and ''put back on the stove'' and the defendant ''piled up'' in bed drunk, and the longer plaintiff lived with defendant the more frequently such acts occurred; when defendant became intoxicated she usually would lie down and go to sleep but would occasionally become abusive; when friends would call

it was his common practice to offer them a drink; defendant would "get too much" and go to sleep and that such became embarrassing to him to the point that he could no longer invite friends to his home; defendant would frequently come to his office, on at least one occasion intoxicated, and create scenes and difficulties, on the last occasion in violation of the injunction, and refused to leave at the request of her sister and brother-in-law, but was finally persuaded to leave by a deputy sheriff; on two occasions he was at the county jail attending to his employment when calls came in concerning him, after which the deputies answering the calls inquired if he was intoxicated; immediately prior to their separation on December 23, 1953, she having previously refused to celebrate Christmas in any manner, he returned home at approximately 8:30 p.m. and found defendant and her brother-in-law present; he gave her a check for $100.00 and packed for a trip to South Carolina to spend Christmas with his elderly mother; the three of them then watched television until 10:00 p.m. when the brother-in-law left, whereupon defendant jumped up and said, "I am going to put some bullets in you. I bought a gun today.", went to a closet and got something in her hand with a piece of cloth over it, at which time defendant's sister came in and grabbed defendant; plaintiff then said, "Goodbye", and left without waiting to see what the object was; plaintiff returned to the home on December 26, 1953, at which time defendant was in Florida, and later moved out before defendant returned; he had recently recovered from ileitis and previous to that had had a tumor removed from his heart; he was under tension and had suffered a loss of appetite and a loss of weight of 40 pounds; in 1954, he and defendant had attempted a reconciliation and to that end had taken several trips together and had looked for a home in which to resume their marital relationship, but he was unable to find a place "to suit her", and, since that time, in June of 1954, defendant had again harrassed him with telephone calls, at least one as late or early as 2:30 a.m., sometimes abusive and other

times "as nice as pie"; and, he was presently under the care of a physician, facing another decision as to surgery.

On cross-examination he stated that he brought liquors into the house and never denied anyone the right to help themselves; he drank with his guests when they visited; after the last separation in July, 1954, defendant had twice visited his office, in violation of the injunction; and, defendant had telephoned him and cursed him for the last time on the day after the contempt hearing of August 23, 1956. Plaintiff is corroborated as to the telephone calls to the sheriff's office, in 1953, accusing him of being drunk and beating the defendant at a time when plaintiff was in the jail attending to his duties, and to the necessity of having a deputy sheriff remove defendant from his office, in 1955, by the respective deputy sheriffs involved.

On March 26, 1957, plaintiff again requested that defendant be cited for contempt alleging telephone calls from the defendant on March 10, 1957, and March 13, 1957, at 3:25 a.m. and 4:30 a.m., respectively, and alleging that on the night and morning of February 13 and 14, defendant repeatedly called the county jail and falsely informed the deputies that plaintiff was drunk. No hearing was held on this petition because of defendant's absence from the state. Subsequently, on August 13, 1957, another petition was presented embodying the above allegations and further alleging that at the time the petition was being prepared, defendant was in plaintiff's office engaging in rude, boisterous and unseemly conduct toward plaintiff and his patients. An order was thereupon issued directing a deputy sheriff to peremptorily remove the defendant from plaintiff's office and setting the matter for hearing at a later date. Defendant answered the petition, denying any contempt, but admitting that she had visited plaintiff's office to discuss a personal matter. At the hearing, plaintiff testified that defendant had telephoned on August 13, 1957, and informed him that she

would be down to the office "to take over"; that he had several patients waiting; that when he looked out and saw defendant he immediately locked the door to his reception room, went out the back way and filed his petition for contempt. Several of the patients testified that defendant appeared angry and nervous, was walking around and trying to get into the plaintiff's private office, and informed all of them repeatedly, in a loud voice, that they would not get to see plaintiff that day, and ordered at least one out of the office. Defendant was adjudged in contempt of court and, because of a previous finding to the same effect on which occasion no penalty was imposed, was remanded to jail for 10 days.

Thereafter, on December 18, 1957, plaintiff filed a second amended bill of complaint in which he incorporated the charges made in the amended bill of complaint and added the specific charges made in the various petitions to have defendant cited for contempt and alleged that since the last occasion defendant has continued to telephone and harass the plaintiff up to the date of filing of the second amended complaint in such a way as to destroy his mental and physical well-being, which amended bill defendant answered denying the charges made against her and requested affirmative relief in the form of separate maintenance.

Further testimony was taken in June, 1958, at which two deputies testified that they, in their work at the county jail, had received telephone calls from the defendant in which she would curse and disparage the plaintiff, and that, on the occasions of these calls, they were of the opinion that defendant was drunk. Plaintiff's daughter-in-law testified that defendant would frequently call her and curse and revile the plaintiff and threaten his life and well-being; that on these occasions she was of the opinion that defendant had been drinking; and that she believed the difficulties between plaintiff and defendant had adversely affected plaintiff's health. Plaintiff, recalled as a witness, testified to occurrences subsequent to the last contempt hearing

in which defendant cursed and threatened him and also stated that, since the episode of August 13, 1957, persons who had been his patients for years had quit him.

Defendant testified, denying making any telephone calls or causing any disturbances in plaintiff's office; that plaintiff drank to excess and always brought a bottle of liquor home in the evening; that they sometimes drank three pints of liquor a day; that she was 58 years old, and that her health was not good. Plaintiff, in rebuttal, testified that he drank approximately 8 ounces of whiskey a day upon the advice of his physician.

At the conclusion of all the evidence, the special commissioner found that the charges of cruelty had been sustained and recommended that plaintiff be granted a divorce from the defendant. The Domestic Relations Court was also of that opinion and granted the plaintiff a divorce, denying defendant the relief sought in her cross-bill. On appeal to the Circuit Court, that court reversed the decree of the Domestic Relations Court, and remanded the case to that Court for further proceedings, to which order this Court granted an appeal on October 31, 1960.

Counsel for both parties, as stated in their briefs, have agreed that the sole issue before this Court is whether plaintiff has established, with the required degree of proof, his charges of cruelty on the part of the defendant.

In stating the issue before this Court, her present counsel states:

"In applying for an appeal to the Circuit Court of Kanawha County, West Virginia, defendant, originally assigned several errors, one of which was to the effect that the Court erred in denying relief sought by defendant in a cross bill. However, a more careful scrutiny of the entire record has convinced defendant's present attorneys that neither party has met the proof required for a divorce. Therefore, defendant makes no cross assignment of error.

"The sole issue is, we think, whether plaintiff has established by that requisite degree of proof a ground or grounds entitlting him to a divorce from defendant."

Nevertheless, counsel for the defendant in this Court defend upon three grounds: (1) jurisdiction; (2) condonation; and (3) the failure of plaintiff to establish "by that requisite degree of proof, a ground or grounds entitling him to a divorce from defendant."

Upon the question of jurisdiction, counsel state that "the court was without jurisdiction due to the abatement of the original cause by such condonation, then it follows that there remained nothing on which to base an amendment by way of introduction of new charges and the decree of divorce was, and is, a nullity." This Court summarily disregards that argument. "Jurisdiction" was defined by this Court in the case of *In the Matter of the Adoption, etc., of Underwood v. Worrell, Judge,* 144 W. Va. 312, 107 S. E. 2d 608, as follows: " 'Jurisdiction' does not relate to the rights of the parties, it is the power to decide a justiciable controversy between them. It is the power to decide such a controversy either way as the merits may require."

The Domestic Relations Court of Kanawha County had jurisdiction of this suit. Both of the parties resided in this county, they last lived together in this county as man and wife prior to the bringing of the original suit, and process was served upon the defendant in this county. Condonation is a matter of defense and does not affect the jurisdiction of the Court. Certain it is that if the defense of condonation had not been presented to the trial court by way of answer by the defendant or otherwise and if a divorce had been granted to the plaintiff, the decree could not have been subsequently attacked as being void whether the attack be considered direct or collateral upon the ground that the plaintiff had subsequent to the acts alleged and proved in the bill of complaint condoned such acts of the defendant.

Code, 48-2-14, provides: "No divorce for adultery shall be granted . . . when it appears that the party voluntarily cohabited after the knowledge of the adultery, or that it occurred more than three years before the institution of the suit; . . . ." However, this Court held in *Myles v. Myles,* 131 W. Va. 513, 48 S. E. 2d 669, that "two acts of sexual intercourse, which plaintiff finally admitted on cross-examination were entered into voluntarily on her part," were not alone sufficient to condone acts of cruelty on defendant's part, but should be considered with the other evidence bearing upon the defense of condonation. In *Currence v. Currence,* 123 W. Va. 599, 18 S. E. 2d 656, this Court affirmed the action of the trial court in denying the wife a divorce from her husband upon the ground that on the day following the acts which were alleged to constitute cruel and inhuman treatment she returned to her husband and resumed complete marital relations with him. In affirming the trial court this Court stated that "the plaintiff made a clear showing of cruel and inhuman treatment, and justified her claim to be reasonably apprehensive of bodily hurt.", but found that her resumption of full marital relations on the following day "operated as a condonation of the defendant's offense, and prevented the maintenance of a suit for divorce by the plaintiff against the defendant while such condonation continued in effect. Code, 48-2-14; *DeBerry v. DeBerry,* 115 W. Va. 604, 177 S. E. 440; *Anderson v. Anderson,* 78 W. Va. 118, 88 S. E. 653; 17 Am. Jur., Divorce, sec. 208; 27 C.J.S., Divorce, sec. 60." The Court further stated: "Upon such subsequent violation of marriage obligations, the condonation is neutralized or terminated, and the injured spouse then may have recourse to the original offense as the basis for divorce. The subsequent conduct of the offender . . . need not amount to a separate ground for divorce. It need only be of such a character as to indicate the bad faith of his repentance and his implied promise to observe his marital obligations." In the syllabus the Court laid down the following rules applicable to condonation:

"2. The condonation by the injured spouse of an offense, which is a ground for divorce, is never absolute or final but is always conditioned upon the subsequent good conduct of the offender.

"3. A condoned marital offense can be revived so as to be the basis of a suit for divorce only by subsequent acts of the offender which will justify a reasonable apprehension that the offense will be repeated or that some other act constituting ground for divorce will be committed."

Under the provisions of Code, 48-2-14, a single act of coition after the innocent party has knowledge of the adultery, is sufficient to constitute condonation. The innocent party condones the prior act of adultery but certainly does not condone any subsequent adultery which the offending spouse may commit. However, it would be necessary in such case that a new suit be brought upon the subsequent ground of adultery as a basis for divorce. In the instant case even if the plaintiff, by his resumption of marital relations with the defendant, condoned all of the acts of cruelty alleged in the original bill of complaint, he did not by that action waive his right to bring a new suit based upon subsequent acts of cruelty.

Not all of the original record in this cause is before this Court. The prolonged litigation herein began with the issuing of summons on December 29, 1953, and the filing either on that day or on January 6, 1954, of the plaintiff's original bill of complaint. By stipulation filed June 12, 1961, the parties agreed "It is hereby stipulated by and between D. J. Savage, attorney for Max J. Goldman, and Roy S. Samms, attorney for Lazette T. Goldman, that the original record in the above styled cause to be certified to the Supreme Court of Appeals of the State of West Virginia, where the said cause is now pending, shall consist of:". By this stipulation forty-eight orders, notices, summonses, letters, etc., "shall be omitted therefrom", referring to the record to be certified to this Court. Among those omissions are the following: "Omit Summons and return on Amended Bill dated March 8, 1956. . . . Omit

Summons and return of process on Amended Bill dated December 18, 1957." The record clearly shows, as found by the trial court and by the intermediate appellate court, the Circuit Court of Kanawha County, that process was served on the first "amended" bill of complaint and that this was equivalent to the bringing of a new suit. Process also was served on the second "amended" bill. In an able twenty-three page opinion, the Judge of the Circuit Court of Kanawha County, sitting as an intermediate appellate court, reversed the decree of the Domestic Relations Court of Kanawha County solely upon the ground that it was his "considered opinion that the plaintiff has not made out a case of cruelty entitling him to a divorce.", relying principally upon the decision of this Court in *Lieberman v. Lieberman*, 142 W. Va. 716, 98 S. E. 2d 275. Upon the issue primarily relied upon by the defendant in this case, this statement contained in the opinion of the Circuit Court is pertinent: "the amended bill of complaint filed on March 8, 1956, relies upon the averments of the original bill of complaint and events which occurred prior to and subsequent to the breakdown of the reconciliation in July, 1954." Judge Taylor then goes on to say:

> "As I view it, the fact that process was served on the first amended bill of complaint was in essence equivalent to the institution of a new suit. Therefore, the rule contended for by counsel for the defendant is inapplicable. It may be further observed that the second amended bill of complaint relies on the averments of cruelty contained in the original bill of complaint and on cruelty alleged to have been inflicted upon the plaintiff by the defendant subsequent to the filing of the amended bill of complaint and of the taking of the original depositions in this cause in September, 1956. Inasmuch as process was issued on the second amended bill of complaint, it might be argued that technically, the filing thereof would be equivalent to the bringing of a new suit, in which event testimony taken prior thereto would not be admissible in support of such amended bill of complaint. However, in view of the fact that the parties thereto have in effect treated the second amended

bill of complaint as a supplemental bill of complaint, it will be so considered here. In this situation the governing rule as to the testimony introduced under this supplemental bill of complaint is stated in Brown v. Brown, 142 W. Va. 695 at p. 708, as follows:

" 'As has been noted, a large part, if not the larger part of the evidence tending to prove drunkenness on the part of the defendant, occurred after the institution of this suit. Although ground for divorce must have occurred before the institution of a suit, the course of conduct of the defendant can be shown as having continued up to the date of the hearing. . . . ' "

In *Isner v. Harris*, 142 W. Va. 275, 95 S. E. 2d 414, it was stated: "This Court said in *Shinn v. Board of Education*, 39 W. Va. 497, 20 S. E. 604, that: 'In our practice we are not careful to observe some of the distinctions between bills in naming them—as, for example, between a bill of amendment and supplemental bill—but we take them to be what they are in fact, without regard to the name given them. . . . ' " This Court held in *Brown v. Brown*, 142 W. Va. 695, 97 S. E. 2d 811, that "Although ground for divorce must have occurred before the institution of a suit, the course of conduct of the defendant can be shown as having continued up to the date of the hearing." However, in the instant case process was served upon the second "amended" bill of complaint, the defendant answered and in her answer sought affirmative relief. Issues were joined and the case was tried without objection or exception to such procedure by the defendant. See Code, 58-1-2. This is the single syllabus point in *Gray v. Gray*, 120 W. Va. 498, 199 S. E. 361: "A bill in chancery for a divorce under Code, 48-2-8, may be amended to amplify or clarify its allegations, but alterations or additions to its averments which lay a new ground for equitable relief constitute the commencement of a new suit and require the service of further process or its equivalent."

It is the opinion of this Court that this case may be clearly distinguished upon its facts from *Lieberman*

*v. Lieberman,* 142 W. Va. 716, 98 S. E. 2d 275. The husband in that case was denied a divorce primarily upon the ground that his testimony as to the alleged acts of cruel and inhuman treatment by his wife "is not corroborated by the testimony of any other witness" and for that reason, under the statute, could not form the basis for a decree of divorce in his favor. That is not true in this case. The testimony of the plaintiff is fully corroborated to that effect. It is true that the defendant denies some of these acts of cruelty and that there is a conflict of testimony as regards them. In the *Lieberman* case this Court said: "The well established rule is that the findings of the trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence.", citing approximately twenty-seven decisions of this Court. This is the single syllabus point in *Hurley v. Hurley,* 127 W. Va. 744, 34 S. E. 2d 465: "In a divorce suit 'a trial chancellor's finding of fact will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence.' *Crouch v. Crouch,* 125 W. Va. 331, 334, 20 S. E. 2d 169."

Cruel or inhuman treatment, as defined by Chapter 56, Acts of the Legislature, 1957, now Code, 48-2-4, as amended, exists ". . . where the treatment by one spouse of another, or the conduct thereof, is such as to destroy or tend to destroy the mental or physical well-being, happiness and welfare of the other and render continued cohabitation unsafe or unendurable; . . . ." This statutory definition is merely enunciatory of the previously obtaining case law of this state. See *Persinger v. Persinger,* 133 W. Va. 312, 56 S. E. 2d 110; *Arnold v. Arnold,* 112 W. Va. 481, 164 S. E. 850; *White v. White,* 106 W. Va. 680, 146 S. E. 720; *Goff v. Goff,* 60 W. Va. 9, 53 S. E. 769. It is the opinion of this Court that the evidence of the plaintiff is sufficient to justify the finding of the Domestic Relations Court that the conduct of the defendant constitutes cruel or inhuman treatment as defined by statute and

its finding in that regard, upon conflicting evidence, should not have been disturbed.

The judgment of the Circuit Court of Kanwha County will be reversed and the decree of the Domestic Relations Court of Kanawha County will be reinstated.

*Reversed and remanded with directions.*