# CHARLESTON.

### MAXWELL *v.* MAXWELL.

Submitted September 14, 1910.    Decided May 16, 1911.

1. DIVORCE—*Cruel and Inhuman Treatment.*
     In a suit for divorce from bed and board, based on alleged cruel and inhuman treatment, the true issue and test is whether under all the facts proven, plaintiff can with safety to person and health continue to live with defendant.   (p. 417).

2. SAME.—*Grounds—Drunkness—Not Habitual.*
     Drunkenness, not habitual, though not ground for divorce, is no excuse for cruelty.  Cruelty, resulting from drunkenness, is cause for divorce.  (p. 417).

3. SAME—*Cruel and Inhuman Treatment.*
     It is not cruel and inhuman treatment, justifying divorce, for a husband residing with a second wife and his children by a former wife, to separate her from them, and to provide for himself and her elsewhere, if that be necessary for the protection of the children against the wife's abuse, or evil influences, and for the peace and happiness of all concerned. (p. 418).

4. EQUITY—*Clean Hands—Divorce.*
     The rule that one who comes into a court of equity must come with clean hands is applicable to divorce proceedings.  Courts of equity are not open to give relief to husband or wife if the complaining party be responsible in a substantial degree for the wrongs and injuries complained of.   (p. 419).

Appeal from Circuit Court, Ohio County.

Suit by Emma W. Maxwell against A. O. Maxwell. Decree for defendant, and plaintiff appeals.

*Affirmed.*

*T. S. Riley* and *A. L. Sawtell,* for appellant.

*John J. Coniff* and *Henry M. Russell,* for appellee.

MILLER, JUDGE:

As ground for a divorce from bed and board plaintiff charges defendant, her husband, with desertion, and with cruel and inhuman treatment; but here, as in the court below, she relies on cruel and inhuman treatment.

Plaintiff is the second wife of defendant, and he is her second husband. From her first husband she obtained a divorce, and was married to defendant in 1899. He took her to his home in Wheeling, where he had been living, with his five children by his first wife, all infants. Disagreements soon began, involving the two oldest daughters, resulting finally, in 1904, in defendant's turning over to his daughters the ostensible control of the house, he and his wife remaining as boarders. The understanding between him and the daughters, of which plaintiff was informed, was that she was to be confined to the use of her bed room, the bath room, the dining room for meals, and the hall way for going in and out, and was not to go into any other part of the house, parlor not excepted, or to interfere in any way with the daughters in their control of the house. Disregard of this arrangement by plaintiff, on several occasions, resulted in quarrels between herself and husband, and his daughters, the husband always taking the side of his children against her. The breach became so wide that he did not always occupy the same room with her, but lodged in other rooms of the house. In 1904, defendant notified his wife that they were going to leave; she went out to be gone a short time, and not returning quite as soon as she had expected, she found herself barred out of the house by the daughters. They notified her, they say, she denies it, that she would find defendant at a certain hotel. She says she went to her mother's home for shelter. There she received a special delivery letter from defendant, informing her that he had "secured quarters at the Park Hotel, Water Street, this City, for our accommodation, where you can come."

Planitiff refused to go to the hotel, but remained with her mother, and soon afterwards sued for divorce. This suit remained pending until about February, 1905, when, after some understanding, it was dismissed, and defendant arranged with plaintiff to resume their marital relations, and to take up their abode with plaintiff's mother, and he arranged with the latter for room and board for himself and wife, making his wife a small allowance of ten dollars per month for personal expenses.

The specific acts of cruelty charged are, gross intoxication, before and after the separation in 1904, rendering life unpleasant, almost unbearable; abuse and mistreatment of her, and encouraging his children to abuse and mistreat her, before that separation, instancing the depriving her of the control and management of the home, and giving it over to the daughters, and confining her to her room, bath, dining room, and hall, as already noted, resulting finally in the proposition to leave, and to turn her out entirely, and the divorce proceedings of 1904; false accusations of unfaithfulness, criminal abortion, before and after the separation of 1904, of being a prostitute, and of improper relations with other men, calling her vile names, as liar, bitch, dirty whelp, degenerate, hell-cat and other names of like character; false arrest and imprisonment on a false charge of threatening him with great bodily harm, and causing her to be taken before a justice, and there failing to appear against her; choking her, and threatening to shoot her and otherwise abusing and mistreating her, rendering life unbearable, and refusal to provide her with the necessaries of life and proper medical treatment in sickness; and on one occasion, after 1905, locking her out of the house in the night time.

The answer of defendant denies all material averments of the bill on which divorce, as prayed for, could be predicated. It makes counter charges, of wrongs and injuries inflicted by plaintiff on defendant, in accusing him to his children of crimes and misdemeanors, in threatening to shoot him, and to do him other acts of violence, and in the use of vile epithets against him. Other acts unbecoming a wife are charged, and other facts are alleged, justifying defendant's suspicions, not accusations, of improper relations by her with another man, and criminal self abuses, by all which plaintiff is alleged to have brought on

herself and on defendant all their domestic troubles, of which she complains against him.

Cruel and inhuman treatment, such as calls for divorce from bed and board, is defined by this Court in *Goff* v. *Goff*, 60 W. Va. 9, following authorities cited, as follows: "Such conduct and acts by a husband toward his wife, such treatment of her by him, as produces reasonable apprehension in her of personal violence, or produces mental anguish, distress and sorrow, and renders co-habitation miserable, impairing, or likely to impair, the wife's health or mind, is cruel and inhuman treatment authorizing a divorce from bed and board under the Code of 1899, chapter 64, section 6, though there be no personal violence."

We have carefully examined all the evidence, and with special reference to the specific charges and counter charges of the parties in pleadings and evidence. First, with respect to abuse, as a result of excessive drunkenness. Drunkenness, not habitual, section 6, chapter 64, Code 1906, though not a ground of divorce, is no excuse for cruelty. Cruelty resulting from drunkenness is a cause for divorce. 1 Nelson on Divorce and Separation, section 322. Defendant admits occasional drinking, and sometimes slight intoxication, but denies cruel treatment of his wife. He accuses her, and she does not deny it, that she frequently drank with him. He testifies that she often urged him to drink liquor when he did not want it, and to supply it for her use and his.

The abuse of plaintiff by defendant, or his children, or his encouraging that abuse, as alleged, is denied by him and by them. We do not think the evidence supports these charges. It is true the management of the house was apparently turned over to the daughters, but defendant and the daughters prove accusations by plaintiff of wrong doings by the father; the use of vile and abusive language and epithets; threats that when they should reach their majority the children would be required to leave the home; loud and boisterous talking over the telephone; indecent and obscene language in the presence of the children, thereby rendering conditions in the home unbearable, and necessitating a separation of the family, the wife from the children, and providing for her elsewhere.

The evidence does not entirely satisfy us that defendant was justified in turning over the management of the household to

the daughters, and afterwards in entirely excluding plaintiff, first from certain portions of the house, and afterwards entirely from the home, and proposing to provide for her at an undesirable hotel, resulting in the divorce proceedings of 1904. It has been suggested that whatever be the truth about these transactions, they were condoned by plaintiff by her subsequent resumption of marital relations with defendant. Such, however, is not the law. 1 Minor Inst. 282. We are unable to say, however, from all the evidence that the court erred in denying the divorce. It must be conceded that defendant had the duty imposed upon him of providing for his children as well as his wife. If his evidence and that of his daughters is to be taken for true, an intolerable condition existed in the household justifying him perhaps in separating his wife from his children and providing for her elsewhere. If, however, this evidence be false, defendant's treatment of his wife in depriving her of his home, either in part, in the first instance, or finally putting her out, was cruel and inhuman. True it is the right of the husband, given by law, to manage the household, and protect his children. This justified him, if there was good cause, in separating her from them, and providing for her elsewhere. Such authority we think may be found in the general rules and principles relating to the subject, laid down in 1 Nelson on Divorce and Separation, sections 294, 296, and 299. These sections hold that the restraint by the husband over his wife and children, and in the management of his household, even to the extent of such separation, if that be necessary, will not amount to cruel and inhuman treatment, justifying divorce.

Defendant specifically denies in his answer and testimony, that he accused plaintiff of unfaithfulness to her marriage vows, or of criminal abortion, and prostitution, the evidence of plaintiff contradicting that of defendant. Defendant does not deny that he suspicioned his wife, and that he reprimanded her for conduct which he regarded unbecoming a wife, particularly, in connection with the witness Beardmore. But he denies that he ever accused her of criminality. The evidence satisfies us that defendant was not without grounds of suspicion. He testifies, and she denies, that shortly before a miscarriage in 1905, she requested him to employ a doctor to produce an abortion, which he refused to do. It is an admitted fact, however, that a day or

two afterwards, on going home, defendant found his wife in a critical condition, attended by a doctor, and that a miscarriage, due to natural or artificial causes, had taken place. A miscarriage under like circumstances had taken place in 1904, before the separation of that year. If a husband accuse his wife falsely of such crimes such accusations would be cause for divorce, provided, as in the case of other false accusations of crime, they be made under such circumstances, as to bring the wife into disrepute, affecting her reputation for chastity, and inflict upon her grievous mental suffering, impairing or likely to impair her health or mind, and rendering co-habitation miserable and unbearable. *Goff* v. *Goff, supra*. The test is the mental suffering of the wife, impairing the health, and threatening her life. 1 Nelson on Divorce and Separation, sections 274, 284.

It is admitted by defendant that he accused his wife of lying, and of being a hell-cat; and in his evidence in this case he refers to her as the "degenerate daughter of an honored sire." He denies, however, the use of the other epithets, of which he is accused. But, as is the case when a wife is accused of adultery, prostitution and the like, whether such accusations will amount to cruel and inhuman treatment depends upon the effect produced or likely to be produced upon the mind, or health of the accused. If no such evil results follow, or are likely to follow, they will not amount to cruel and inhuman treatment, giving cause for divorce. See authorities cited in the preceding paragraph. And if the fact be, as the evidence in this case tends to show, that the plaintiff was herself guilty of crimination and recrimination, and of the like use of abusive language and epithets against defendant, and was guilty of conduct unbecoming her as a consort, and thus brought upon herself the troubles of which she complains, a court of equity should deny her relief. One who comes into a court of equity for divorce, must, as in all other cases, come with clean hands, and substantially without fault. Courts of equity are not open to give relief to husband and wife if responsible in a substantial degree for the wrongs and injuries of which they complain. This doctrine is fully covered by the opinion of this Court in the recent case of *Hall* v. *Hall*, decided at the present term, and not yet officially reported. And the same principles were applied in *Bacon* v. *Bacon,* 68 W. Va. 747, 70 S. E. 762.

The charge of false arrest, though the evidence tends to support it, without more, is not a good ground for divorce from bed and board. Defendant accused plaintiff before a justice of threatening his life, and did not appear against her, giving as a reason the advice of his counsel, that without evidence to corroborate his own he could not succeed. The rule respecting malicious prosecutions seems to be, as in other cases of false accusation, that the fact that the accused has been acquitted, or that the charge was groundless, does not establish cruelty, for cruelty is measured by the results upon the complainant, and is not determined by the law of damages for malicious prosecutions. 1 Nelson on Divorce and Separation, section 280. The test here as in other cases is, not the fact of false accusation, but the effect thereof on the health or mind of the accused.

The charges of choking, threatening to shoot, refusal to provide necessaries of life, and to provide proper medical treatment, and defendant's alleged lock out of plaintiff, all substantially depend on plaintiff's unsupported testimony, except as to one instance, where defendant is accused of having raised his hand as to strike his wife. This was just before the present suit, in the presence of one Beardmore, a fellow boarder at her mother's house. The testimony of Beardmore is relied on by plaintiff in support of her evidence. The evidence, with corroborating circumstances, satisfies us, however, that this demonstration, if any, was directed, not against plaintiff, but against Beardmore, who admits he thrust himself between plaintiff and defendant, when the latter late at night was endeavoring to induce his wife to return to her room. Defendant's denial of personal violence, or threats of personal violence, prior to the separation of 1904, is supported by the evidence of his daughters; and he is supported in his denials of similar acts, while living with plaintiff's mother, by the mother herself. She testifies, that so far as her observations went, defendant's treatment of his wife was always gentle and kind, and that she never saw defendant abuse his wife. She was present when defendant is accused of having raised his hand as if in the act of striking his wife. The charge of failure to provide, as a ground for divorce, for cruel and inhuman treatment, is unsupported by the evidence. The provision for the support of the plaintiff the last two years before the institution of the suit, while in

some respect it may appear to have been meager, particularly the monthly allowance to the plaintiff for personal expenses, yet it seems to have been fairly satisfactory to her.   There is some evidence that defendant neglected his wife to a certain extent when she was ill and suffering from her last miscarriage; but after some reluctance he paid the doctor's bill.   Such neglect, to be ground for divorce for cruel and inhuman treatment, must cause or be likely to cause injury to health, or to produce great mental suffering.   1 Nelson on Divorce and Separation, section 374.   There is nothing in the evidence justifying such conclusion in this case.

We conclude as the court below concluded that a case for divorce on the grounds of cruel and inhuman treatment, or upon any ground, has not been made out, by proof, and that the decree below should be affirmed.

*Affirmed.*