# CHARLESTON.

JOHN J. HENDRICK *v.* W. L. JENKINS *et als.*

(No. 5885)

Submitted November 15, 1927.    Decided November 22, 1927.

APPEAL AND ERROR—*Decree Determining Fact Question Will be Reversed, on Clear Showing That it is Against Weight of Evidence.*

A decree determining a question of fact will be reversed where it clearly appears to be against the weight and preponderance of the evidence.

(Appeal and Error, 4 C. J. § 2871.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Gilmer County.

Suit by John J. Hendrick against W. L. Jenkins and others. From an order decreeing the sale of certain lands under a vendor's lien, defendant Roy Furr appeals.

*Decree reversed; bill dismissed.*

*R. F. Kidd,* for appellant.
*Robert L. Bland,* for appellee.

WOODS, JUDGE:

This appeal is taken from a final order of the circuit court of Gilmer County decreeing that certain lands be sold under a purported vendor's lien to satisfy a $335.00 note secured thereby.

Roy Furr, the appellant, in consideration of $1,500.00, conveyed the surface of a 35½-acre tract to W. A. Miller, the deed reciting the payment of $500.00 in cash, and the delivery of five promissory notes for $200.00 each, payable in one, two, three, four and five years from date, respectively, and that a vendor's lien was retained to secure the payment of the same. Miller also acquired possession of a ten-acre tract from T. J. Moore for $150.00—$50.00 cash, and his note for the balance. Moore retained a vendor's lien to secure the

note.    Before any of said notes had become due, Miller trans-
ferred the foregoing tracts by one deed to Jenkins for a stip-
ulated consideration of $1,650.00.    By the terms of this deed
Jenkins assumed the payment of the foregoing notes (total-
ing $1,100.00), and for the remainder of the consideration
paid $215.00 cash, and gave his note to Miller for $335.00.
Miller retained a vendor's lien on the property to secure the
payment of all of said notes.    Furr negotiated the first of
the series of notes from Miller, and when it came due Jenkins
failed to meet the same.    Jenkins wrote Miller to the effect
that he could not take the note up and would turn the land
back.    Miller then wrote Furr stating that he had been over
to see Jenkins, and that, if the latter did not pay the note the
following week, he had agreed to give up the property.
Shortly after this Miller again wrote Furr (who had taken
up the note, previously negotiated) : "I thot write and tell
you that i cant take the land back for I had to sell my land
to pay my debts i cant make a deed Jenkins can make you a
deed any time you want it.    T. J. Moore tuck his land back
F. M. Wilson made the deed for Moore if you want a deed i
will have Wilson to make a deed back let me no and I will
go and make it to you."    A conference of the three followed,
and it was agreed that Jenkins should re-convey the tract of
35½ acres to Furr for a sum sufficient to cover the five notes
given to Miller.    Thereupon Miller and Furr went to the office
of Wilson, Attorney, and had a deed prepared for Jenkins
and wife to execute to Furr, which deed recites a considera-
tion of $1,000.00, of which $400.00 is mentioned as cash in
hand paid, and the residue the three notes of two hundred
dollars each, dated on the 11th day of July, 1922, payable
October 1, 1925, 1926 and 1927, respectively, which said notes
were to be delivered up to the maker thereof as they became
due and payable.

The present suit was instituted by an assignee of the
$335.00 note—the same having been transferred after ma-
turity.    The controlling question presented is whether or not
Miller had waived the lien previous to the assignment of
said note.    Furr contends that Miller agreed to deliver up
the note and thereby waived the lien.

A formal release of a vendor's lien is not required. *Frazier* v. *Hendren*, 80 Va. 265. A waiver of such lien may result, not only from the provisions of the agreement of the parties to the transaction, but may be implied from acts, conduct, or declarations inconsistent with its retention. 39 Cyc. 1826, and cases there cited.

Miller contends that the note was not mentioned in any of their conferences. He relies on the deed from Jenkins to Furr—the fact that it did not mention the release of the $335.00 note, or lien securing the same. Furr defends, however, on the ground that Miller agreed to deliver up the note, but at the time stated it was being used as collateral. The evidence shows that it was not so used until afterwards. Furr and Jenkins testify to the fact that the note was to be delivered up; others to the effect that Miller had offered the property for sale to at least two parties for $1,000.00, before Furr was induced to take it back; and another that Miller had advised him that he expected to lose "something like $300.00" on the deal. It is also shown that the original consideration passing from Miller to Furr for the 35½-acre tract was bolstered up in that $250.00 of the cash consideration of $500.00, according to one witness, was represented by a "plug horse", a saddle, and bridle, of a total value of $50.00.

Is it not reasonable to believe that Miller, finding Jenkins unable to fulfill his bargain, set about to get the purchase money notes held by Furr back into his own hands, in order to protect himself against further loss should the property be sold under Furr's lien for a sum considerably less than $1,000.00—the amount of said purchase money notes? A direct transfer to Furr was suggested and later consummated. It provided for the delivery of the five notes back to Miller— the first two being delivered at the time of the transfer as the $400.00 cash consideration, and the other three to be delivered as they became due. While it does not purport to show what considerations moved from Furr to Miller, or Miller to Jenkins, the deed itself is practically the deed of Miller. The latter's actions in connection with the reconveyance are so closely allied that he is bound thereby in equity

to the same extent as if he had signed the instrument along with Jenkins and wife. He was to be benefited by it. By his own arrangement he has had the transfer made direct to Furr, rather than take it back and then re-transfer. In the absence of oral evidence to the contrary, would not a presumption arise that Furr was taking the land back in satisfaction of his notes free from any additional incumbrances that may have attached since his transfer? Why should Furr agree to take the property back in any other shape? He had a prior lien. He could have had the property sold under his lien, and then proceeded against Miller on any of the notes remaining unsatisfied. To give up the notes for land subject to an additional lien for $335.00 under the present state of facts, would be unthinkable. All knew that Jenkins would be unable to meet any of the payments. Then again, it is practically admitted that the $335.00 note in question was assigned for the purpose of this suit, and that the nominal plaintiff, if he failed, was to pay the costs of the suit. The acts of Miller in the negotiation of the re-conveyance comport to the claim of Furr and Jenkins that there was an express agreement by Miller to release the lien and surrender up the note. The evidence of the release finds support from all the facts and circumstances surrounding the transaction.

In view of our holdings to the effect that a decree determining a question of fact will be reversed, where it clearly appears to be against the weight and preponderance of the evidence, or where such finding is inconsistent with what the evidence on the whole clearly shows was intended to be the relation of the parties toward one another, we must reverse the decree in this case. *Wallace* v. *Douglas*, 58 W .Va. 102; *Pearson* v. *Pipe Line Co.*, 56 W. Va. 650. This conclusion makes decision of other assignments of error unnecessary.

The decree is therefore reversed, and the plaintiff's bill dismissed.

*Decree reversed; bill dismissed.*