Oleta K. Lieberman

v.

Benjamin Lieberman

*and*

Benjamin Lieberman

v.

Oleta K. Lieberman

(No. 10849)

Submitted April 24, 1957. Decided May 28, 1957.

*Stanley E. Preiser,* for appellant.

*H. D. Rollins,* for appellee.

HAYMOND, JUDGE:

From a final decree of the Circuit Court of Kanawha County entered April 25, 1956, in two consolidated cases, this Court granted an appeal and supersedeas upon the petition of Benjamin Lieberman, who is the defendant in a suit for separate maintenance instituted against him by his wife, Oleta K. Lieberman, in January 1954, and is the plaintiff in a suit for divorce instituted by him against her on May 12, 1954. Both suits were brought in the Domestic Relations Court of Kanawha County. In the suit by the wife for separate maintenance the relief prayed for by the plaintiff was based upon the charges of desertion and abandonment and cruel or inhuman treatment; and in the suit by the husband for divorce the relief prayed for by the plaintiff was based upon the charge of cruel or inhuman treatment.

The cases were consolidated and heard together in the domestic relations court upon the bill of complaint of the plaintiff and the answer of the defendant in each case; the depositions of Benjamin Lieberman, the plaintiff in the suit for divorce, and four witnesses produced in his behalf; the testimony of Oleta K. Lieberman, the plaintiff in the suit for separate maintenance, and three witnesses produced in her behalf, and the testimony of Benjamin Lieberman, before a special commissioner in chancery; the report of the special commissioner; and the exceptions of Oleta K. Lieberman to the report of the special commissioner.

The domestic relations court overruled the exceptions to the report of the special commissioner, confirmed the report, and by final decree entered October 7, 1955, refused to grant Oleta K. Lieberman, the plaintiff in the suit for separate maintenance, the relief prayed for by her and dismissed her bill of complaint in that suit, but granted the relief prayed for by Benjamin Lieberman, the plaintiff in the suit for divorce.

Upon appeal by Oleta K. Lieberman to the Circuit Court of Kanawha County that court by final decree entered April 25, 1956, reversed the decree of the domestic relations court of October 7, 1955, and remanded the consolidated cases to that court and directed it to grant separate maintenance to Oleta K. Lieberman, the plaintiff in that suit, to deny Benjamin Lieberman, the plaintiff in the divorce suit, the relief prayed for by him, and to require him to maintain and support his wife and to make certain monthly payments that had been allowed her by decrees entered by that court.

The parties to these suits, who were residents of Kanawha County, were married in Baltimore, Maryland, March 10, 1941, and after their marriage they continued to reside in Charleston, Kanawha County. No children were born of the marriage. At present the wife is living in a residence at 2 California Avenue in Charleston which is owned jointly by her and her husband and he is residing in an apartment at 305 Riverview Terrace in

Charleston. They last lived and cohabited together in an apartment at 3903 MacCorkle Avenue, Kanawha City, Charleston, Kanawha County, in December 1952, and sometime in September 1953 they moved to the residence at 2 California Avenue in Charleston where they occupied separate living quarters until the husband left on November 15, 1953.

The husband purchased the residence at 2 California Avenue for $17,500.00 and paid $1,000.00 of the purchase price. Sometime later at the request of the wife he conveyed to her an undivided one-half interest in the property. The payment of the unpaid balance of the purchase price which appears to be $16,300.00, secured by two deeds of trust, was assumed by the husband and he is making monthly payments of approximately $110.00 on that indebtedness. The wife owns some of the furniture in six rooms the value of which does not appear and the husband purchased the remaining furniture the value of which is approximately $1,500.00. During the time they occupied the residence at 2 California Avenue and until the husband left he gave the wife an allowance of $60.00 a month and purchased the groceries. After the husband left in November 1953 he paid the wife, who continued to live in the property, $40.00 in December 1953. By decree of the domestic relations court entered March 8, 1954, he was required to pay her $130.00 per month, but by a subsequent decree entered by that court March 30, 1955, he was permitted to deduct from the amount of $130.00 per month an amount equal to forty per cent of the rents received by her from the residence. The final decree of the domestic relations court, entered October 7, 1955, relieved him from the payment of the amount required by the decree of March 30, 1955, after July 11, 1955. The wife rents a part of the property and is receiving at least $60.00 a month from the rented portion. She owns no property except her furniture and her undivided one-half interest in the residence. She has no present income producing employment. The husband is regularly employed at a local chemical plant and receives a salary of approximately $7,000.00 per year. In addition

to the furniture and his undivided one-half interest in the residence he owns an automobile worth $300.00 and a small chemical business the value of which is not shown by the evidence. Though the wife testified generally that her husband did not properly provide for her support before their final separation, there is no specific complaint by her that he failed to furnish her clothes or other household necessities suitable to the standard of living maintained by them since their marriage. The health of each of the parties at the time these cases were heard was good. Each testified to nervousness caused by the conduct of the other but neither produced any medical testimony to show that the health of either of them was affected or impaired by such conduct.

The evidence relating to the acts which the wife contends constitute cruel or inhuman treatment upon the part of the husband consists principally of the testimony of the wife. She testified that sometime in the spring of 1952 when she desired to use the family automobile he told her in profane language that she could not use the automobile, knocked a cup of coffee from her hand, knocked her to the floor, and cut a two inch gash in her head; that when she attempted to use the telephone to call the police to get a warrant he tried to take the telephone from her hand; that she later went to the police station but did not obtain a warrant and was told to get a lawyer and to obtain a divorce. Though she denied that she was drinking on that occasion the policeman, who testified in behalf of the husband, stated that when she came to the police station he talked to her for sometime, that she was intoxicated while she was at the police station, that he refused to obtain a warrant for her, and that he advised her to consult an attorney. He also testified that she told him she thought she would go home and kill her husband and that he called a taxicab to take her home. The policeman in his testimony did not refer to any physical injury that had been sustained by her.

The wife also testified, omitting to specify the time or place, that the husband had given her a black eye on

more than one occasion; that he threatened her in December 1952, and in profane language told her that he would get rid of her; that he stayed away from home on two different nights, one of which was Christmas Eve 1952; that in January 1953, after the parties had ceased to cohabit, she, a woman and two men, after spending part of an evening at a beer parlor on Washington Street, went at her invitation to her residence about midnight; that when they came to the house with some bottles of beer which they had planned to drink there, he refused to admit her guests, treated them rudely, and caused her humiliation in their presence; and that the husband humiliated her by his overbearing attitude toward her. She admitted that she accused him of improper conduct with other women. She denied that she committed the acts which he contends constitute cruel or inhuman treatment, that she attacked him or tore his shirt, and that she threatened him, though when confronted with the record of a telephone conversation which she had with him on November 15, 1953 in which she threatened to kill him, used profane language and called him vile names, she stated that any threats which she had made were uttered in jest. She also denied his charge that she had called him vile names in the presence of his friends; that she had drunk intoxicants with another man; and that when her husband was absent her former husband had spent a night at her home.

The maid who did house work for the wife on certain days during a period of three or four years testified that she noticed on one occasion that the wife had a black eye but that she never heard the husband and wife quarrel or saw either mistreat the other. The father of the wife testified that the parties lived in his home for about a year shortly after they were married; that when they left his home the husband owed him about $130.00 or $140.00 which has not been paid; and that he never saw the husband abuse or mistreat the wife.

The only evidence of cruel or inhuman treatment which the husband charged against the wife, except some of

the threats of which she is accused, was the testimony of the husband. He testified that the wife on at least three separate occasions attacked him, that in each instance he had to hold her hands to prevent her from causing further injury to him, and that on these occasions she tore his shirt and scratched him. He also testified that on numerous occasions the wife used profane language, called him vile names, and falsely accused him of improper conduct with other women; that she was frequently away from home late at night; that on two occasions she went out at night with other men; that she told him that when he was absent her former husband had stayed one night with her at their home; and that in October, 1953, she had a knife, threw a cup at him, used profane language, and told him she would kill him. He further testified that she made many threats to take his life one of which occurred in a recorded telephone conversation between them on November 15, 1953, after he had left their home and when he was at the office of his attorney. The testimony of the husband, however, concerning the foregoing conduct of the wife, except her threats on some occasions, was not corroborated by the testimony of any other witness. The record of her threats and several profane statements in the telephone conversation of November 15, 1953, in which he intentionally irritated and provoked her, was introduced in evidence over her objection and by transcription was heard by the special commissioner and also by the circuit court upon the appeal to that court.

An employee at the plant where the husband was employed, who was produced as a witness in behalf of the husband and who was acquainted with and recognized the voice of the wife, testified that on one occasion he lifted the receiver of a telephone at the plant and heard a conversation between the husband and the wife in which she told the husband that she was going to kill him. Another employee at the same plant, an acquaintance of the husband and a witness in his behalf, testified that on July 4, 1953, during a short visit at the Lieberman home he heard the wife say when the husband was going

into the kitchen that she thought she would kill him some day or words to that effect. When asked if the wife made the remark in a joking manner the witness replied that it was "uncanny" and that "there was no jesting about it." As already indicated the policeman from whom the wife sought but did not obtain a warrant, who testified as a witness in behalf of the husband, stated that she told him that she thought she would go home and kill her husband.

The husband testified that he finally believed she would carry out her threats to kill him and that he left their home on November 15, 1953, because he feared she would do so. The evidence, however, does not disclose that the wife at any time attempted to kill him or that, except on the one occasion when according to the testimony of the husband she had a knife, she ever possessed any instrument or weapon which could be used for that purpose. The evidence shows that despite her threats the husband continued to occupy the residence and to sleep in a separate room, the door of which was barred by him by placing a chair against it but was not locked, for a period of several months after they ceased cohabitation and before he left on November 15, 1953.

The husband assigns as error in the final decree of April 25, 1956, the action of the circuit court (1) in reversing the decree of the domestic relations court which refused to grant separate maintenance to the wife and in awarding her separate maintenance; (2) in reversing the decree of the domestic relations court which granted the husband a divorce and in denying him that relief; and (3) in entering the final decree upon the appeal by the wife because such appeal was never granted by the circuit court.

The wife insists that the evidence sufficiently establishes her right to a decree of separate maintenance and that the evidence shows that the husband is not entitled to a divorce. On the contrary the husband insists that under the evidence the wife is not entitled to separate maintenance but that he has fully established his right to a divorce.

Though these cases were consolidated and decided as one case by final decree of the domestic relations court and by final decree of the circuit court upon appeal, the evidence in behalf of the plaintiff in each suit was introduced separately and at different times.

The statute on which the wife bases her suit for separate maintenance is Section 29, Article 2, Chapter 48, Code, 1931, as amended by Section 29, Article 2, Chapter 35, Acts of the Legislature, 1935, Regular Session, and to the extent here pertinent provides: "Whenever a husband shall, without good and sufficient cause, have failed to provide suitable support for his wife, or have abandoned or deserted her, or if the wife, for such cause as would entitle her to a divorce, is actually living apart from her husband, and such husband is in either case of sufficient ability to support his wife, the circuit court of any county that would have jurisdiction of a suit for divorce between the parties, shall, at the suit of the wife, in chancery, whether or not a divorce be prayed for, decree to the wife as alimony and separate maintenance such sum out of the husband's earnings and income as the court may determine, considering the circumstances of the parties and their stations in life, and may prohibit the husband from imposing any restraint on her personal liberty, and may free her real and personal property from possession, control or any interest of the husband; * * * ."

This statute, insofar as it relates to the jurisdiction of a court of equity to entertain a suit for separate maintenance, is merely declaratory of the law as announced in the decisions of this Court before its enactment. *Davis* v. *Davis,* 137 W. Va. 213, 70 S. E. 2d 889; *Wolford* v. *Wolford,* 133 W. Va. 403, 56 S. E. 2d 614; *Vickers* v. *Vickers,* 89 W. Va. 236, 109 S. E. 234; *State ex rel. Travis* v. *Maxwell,* 89 W. Va. 31, 108 S. E. 418; *Huff* v. *Huff,* 73 W. Va. 330, 80 S. E. 846, 51 L.R.A., N. S., 282; *Lang* v. *Lang,* 70 W. Va. 205, 73 S. E. 716, 38 L.R.A., N. S., 950, Ann. Cas. 1913D, 1129. In a suit for separate maintenance the same proceedings are followed, the same principals are applied, and the issues involved are determined

generally as in other suits in equity. Unlike a suit for divorce, which is governed by various provisions of Article 2, Chapter 48, Code, 1931, as amended, among which are the provisions of Section 11 of that article and chapter that the bill of complaint shall not be taken for confessed, that whether the defendant answers or not the case shall be tried and heard independently of the admissions of the parties in the pleadings or otherwise, and that no decree shall be granted on the uncorroborated testimony of the parties or either of them, a suit for separate maintenance is not subject to those statutory requirements and in it the bill of complaint may be taken for confessed and a decree for alimony and separate maintenance and other proper relief may be based on the uncorroborated testimony of the plaintiff. See *Wolford* v. *Wolford*, 133 W. Va. 403, 56 S. E. 2d 614.

The wife, the plaintiff in the suit for separate maintenance, has not established her right to the relief for which she prays in her bill of complaint. The evidence shows without question that the husband left their home on November 15, 1953, without good and sufficient cause which would constitute a ground which would entitle him to a divorce; that when he left he intended to remain away from her permanently; and that since he left he has continued to live separately and apart from her. The evidence, however, does not show that he failed to provide her with suitable support commensurate with their standard of living. The uncontradicted evidence is that before he left her on November 15, 1953, which was approximately eleven months after they ceased cohabitation, he furnished her with a suitable home, in which he gave her an undivided one-half interest which she still owns; that, though the property is encumbered to the extent of almost its entire value, he has personally assumed the payment of the liens against it and is paying on that indebtedness; that while they occupied their residence he gave her an allowance of sixty dollars per month and supplied the groceries; and that since he left she is receiving, besides the use and control of the property, at least sixty dollars per month for the portion

which she rents. The evidence does not show that before their separation he failed to furnish her adequate clothing or other household necessities.

The uncorroborated testimony of the wife shows misconduct of the husband in striking and injuring her in the spring of 1952, amounting to cruel or inhuman treatment which, but for other evidence in the case, would entitle her to a decree of separate maintenance. See *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594. It is significant, however, that she voluntarily continued to live and cohabit with him after that incident until December 1952. Whether her action in continuing marital relations with her husband condoned the foregoing misconduct on his part need not be determined in the decision of these cases. The testimony of the wife that her husband gave her a black eye on several occasions is not sufficient to establish cruel or inhuman treatment for the reason that the time, the place, and the surrounding circumstances, or whether he or she was the aggressor, are not sufficiently shown. The conduct of the husband in refusing to permit her guests to enter or remain in the home about midnight upon the occasion when she invited them to go with her from a beer parlor where they spent part of the evening drinking beer with a supply of beer which they intended to drink at the home, of which the wife complains, did not constitute cruel or inhuman treatment by him. On the contrary the acts of the wife on that occasion constituted improper conduct by her.

The testimony of the husband that on at least three separate occasions she attacked him, that in each instance he had to hold her hands to prevent her from causing further injury to him, that on these occasions she tore his shirt and scratched him; that on numerous occasions she used profane language, called him vile names, and falsely accused him of improper conduct with other women; that she was frequently away from home late at night; that on two occasions she went out at night with other men; that she told him that when he was absent her former husband had stayed one night with her at

their home; and that in October 1953 she had a knife, threw a cup at him, used profane language, and told him that she would kill him, is not corroborated and for that reason his uncorroborated testimony as to these matters under the statute can not form the basis for a decree of divorce in his favor. His testimony, however, concerning those occurrences is admissible to show inequitable conduct upon the part of the wife. See *Tillis* v. *Tillis*, 55 W. Va. 198, 46 S. E. 926, in which this Court held that admissions of a party are competent evidence to defeat a divorce. As a general rule, such admissions, though not sufficient to support a decree for divorce, are admissible. 6 Michie's Jurisprudence, Divorce and Alimony, Section 27; 17 American Jurisprudence, Divorce and Separation, Section 393. The threats which she made in the presence or the hearing of persons other than her husband which were testified to by them and the threats, the profanity, and the vile names she called the husband in the telephone conversation of November 15, 1953, which were recorded and established by the record of that conversation, which contradicts her denial that she made such threats, and materially shakes the credibility of her testimony, also constituted inequitable conduct upon the part of the wife. The doctrine that a person who seeks relief in a court of equity must come into court with clean hands applies to a suit for separate maintenance. *Edwards* v. *Edwards*, 106 W. Va. 446, 145 S. E. 813; *Maxwell* v. *Maxwell*, 69 W. Va. 414, 71 S. E. 571. It also applies to a suit for divorce. *Brown* v. *Brown*, 142 W. Va. 695, 97 S. E. 2d 811; *Rohrbaugh* v. *Rohrbaugh*, 136 W. Va. 708, 68 S. E. 2d 361; *Cottle* v. *Cottle*, 129 W. Va. 344, 40 S. E. 2d 863; *Myers* v. *Myers*, 127 W. Va. 551, 33 S. E. 2d 897; *Smith* v. *Smith*, 125 W. Va. 489, 24 S. E. 2d 902; *Wolfe* v. *Wolfe*, 120 W. Va. 389, 198 S. E. 209; *Mohr* v. *Mohr*, 119 W. Va. 253, 193 S. E. 121; *Hatfield* v. *Hatfield*, 113 W. Va. 135, 167 S. E. 89; *Edwards* v. *Edwards*, 106 W. Va. 446, 145 S. E. 813; *Maxwell* v. *Maxwell*, 69 W. Va. 414, 71 S. E. 571; *Hall* v. *Hall*, 69 W. Va. 175, 71 S. E. 103, 31 L.R.A., N. S., 758.

In *Maxwell* v. *Maxwell*, 69 W. Va. 414, 71 S. E. 571, a divorce suit, this Court held in point 4 of the syllabus that "The rule that one who comes into a court of equity must come with clean hands is applicable to divorce proceedings. Courts of equity are not open to give relief to husband or wife if the complaining party be responsible in a substantial degree for the wrongs and injuries complained of." In *Murrin* v. *Murrin*, 94 W. Va. 605, 119 S. E. 812, also a divorce suit, the statement in point 3 of the syllabus is that "Conduct of a wife proved in a suit brought by her for a limited divorce on the ground of cruelty, while not sufficient to warrant a divorce to her husband, may nevertheless be sufficient to preclude her from relief." In *Hall* v. *Hall*, 69 W. Va. 175, 71 S. E. 103, 31 L.R.A., N. S., 758, also a divorce suit, the opinion contains this language: "Conduct sufficient to bar relief need not be such as would give the defendant cause for a divorce. Remedy and divorce are different things. Conduct sometimes denies remedy for apparent rights. Inequitable conduct on the part of the plaintiff, though it does not amount to cause for a divorce, suffices to defeat his application for relief." In *Edwards* v. *Edwards*, 106 W. Va. 446, 145 S. E. 813, also a divorce suit, the syllabus contains this language: "Inequitable and improper marital conduct of a wife proved in a suit brought by her against her husband for divorce from bed and board on the grounds of cruelty, desertion and adultery, while not sufficient to warrant a divorce to her husband, may nevertheless be sufficient to preclude her from relief." The inequitable conduct which operates to defeat the right of a plaintiff to a divorce must, however, cause or contribute substantially to the misconduct of the defendant on which the plaintiff relies as a ground for divorce. *Rohrbaugh* v. *Rohrbaugh*, 136 W. Va. 708, 68 S. E. 2d 361; *Smith* v. *Smith*, 125 W. Va. 489, 24 S. E. 2d 902; *Hatfield* v. *Hatfield*, 113 W. Va. 135, 167 S. E. 89. See *Finnegan* v. *Finnegan*, 134 W. Va. 94, 58 S. E. 2d 594; *Moss* v. *Moss*, 113 W. Va. 183, 167 S. E. 444; *Shook* v. *Shook*, 111 W. Va. 284, 161 S. E. 235. When a divorce is sought on the ground of cruel or inhuman treatment

based upon physical violence, provocation by the complaining spouse is material and will prevent relief. *Myers* v. *Myers*, 127 W. Va. 551, 33 S. E. 2d 897; *Wolfe* v. *Wolfe*, 120 W. Va. 389, 198 S. E. 209.

Inequitable conduct of the wife which, though not sufficient to constitute a ground for divorce, has caused or contributed substantially to the misconduct of the husband upon which she bases her right to relief in a suit for separate maintenance will preclude her from the relief which she seeks in such suit. The evidence shows clearly that the misconduct of the wife which the husband charges constituted cruel or inhuman treatment caused or contributed substantially to the acts and conduct of the husband on which she bases her claim to relief in the suit for separate maintenance. Her frequent threats and the numerous occasions on which she used profane language, called him vile names, and accused him of improper conduct with other women, mentioned in the testimony of the husband, and her threats on at least three separate occasions, established by the testimony of other witnesses, contributed substantially to at least some of the acts of cruel or inhuman treatment of which she accuses him and his conduct in removing from the home with the intention of remaining away from it permanently on November 15, 1953. These acts of the wife constituted inequitable conduct upon her part and operate to defeat her right to relief in her suit for separate maintenance.

As previously indicated the evidence in behalf of the husband to establish his right to a divorce from his wife on the ground of cruel or inhuman treatment consists mainly of the testimony of the husband concerning her alleged acts of physical violence and her conduct in using profane language, calling him vile names on numerous occasions, and accusing him of improper conduct with other women, and his testimony as to those matters is not corroborated by the testimony of any other witness or by any other evidence. Under Section 11, Article 2, Chapter 48, Code, 1931, as amended, no decree shall be

granted on the uncorroborated testimony of the parties or either of them in a suit for divorce. *Persinger* v. *Persinger,* 133 W. Va. 312, 56 S. E. 2d 110. For that reason he has failed to prove his charge of cruel or inhuman treatment unless her threats to take his life, as to which he testified and which are shown by the testimony of other witnesses to have occurred on at least three separate occasions, constitute cruel or inhuman treatment and entitle him to a decree of divorce on that ground.

This Court has held in *Lord* v. *Lord,* 80 W. Va. 547, 92 S. E. 749, that to constitute cruel or inhuman treatment or reasonable apprehension of bodily hurt threats by one spouse to inflict serious bodily injury upon or to take the life of the other spouse must be deliberate and malignant and that there must be reasonable probability that the person who makes such threats will execute them. In that case this Court also held that threats made by one spouse to inflict serious bodily injury upon or to take the life of the other spouse are not malignant or dangerous when it appears that they were made only in anger and upon provocation; that there was no actual attempt to execute any of them on any of the numerous occasions which afforded an opportunity for that purpose; that they were made long before the severance of cohabitation and against the spouse whose conduct after knowledge of the threats indicates lack of fear of attempts to carry them into execution; and that the spouse who made such threats had not at any time maliciously assaulted or attacked any person. Though the husband testified that the reason he finally left the home on November 15, 1953, was his belief at that time that his wife would carry her threats into execution, and that he did not think it would be safe for him to resume marital relations with her, the undisputed facts are that, during a period of several months, with knowledge of her threats, he lived in the residence, ate meals there, and slept at night in a separate room of the house, the door of which, though barred by a chair placed against it by him, was not locked at any

time. The evidence does not show that the wife committed any overt act, or did anything to further any deliberate plan, or engaged in any conduct, to indicate that she seriously intended to execute any of her threats although she had ample opportunity to do so on many occasions when she and her husband were alone together in the home, or that she ever made use of any weapon or dangerous instrument that would enable her to carry out her threats, or that she ever attempted to kill him. These threats were apparently made in anger, and as incidental to or the aftermath of the many quarrels and bitter disagreements which frequently occurred between them and appear to have been provoked by each of them on different occasions. It is also clear, from the acts and the conduct of the husband, that he did not take her threats seriously and that he did not entertain any genuine fear that his wife would execute any such threat or any reasonable apprehension of bodily hurt. At the time she made the threat in the telephone conversation which was overheard by an employee at the plant, where the husband was at the time, she had no present opportunity to execute it and when she made the threat in the presence of the policeman she also had no present opportunity to carry it into effect against her husband who was not present and did not hear her threaten him. The threat which was heard by an employee of the company for which the husband worked during a short visit by the employee at the home of the husband and the wife was not accompanied by any attempt of the wife to execute it. In view of these undisputed facts, the threats of the wife, as shown by the evidence, did not constitute cruel or inhuman treatment and do not entitle the husband to a divorce on that ground.

As already pointed out, the domestic relations court upon conflicting evidence in behalf of the respective parties in these cases found that the wife was not entitled to the relief which she seeks in her suit for separate maintenance and that the husband was entitled to the relief which he seeks in his suit for divorce; and the circuit court on appeal, on the same evidence, found that the

wife was entitled to separate maintenance and that the husband was not entitled to a divorce and reversed the findings of the domestic relations court.

The well established rule is that the findings of the trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence. *Brown* v. *Brown*, 142 W. Va. 695, 97 S. E. 2d 811; *Rohrbaugh* v. *Rohrbaugh*, 136 W. Va. 708, 68 S. E. 2d 361; *Acker* v. *Martin*, 136 W. Va. 503, 68 S. E. 2d 721; *Holt Motors* v. *Casto*, 136 W. Va. 284, 67 S. E. 2d 432; *Adams* v. *Ferrell*, 135 W. Va. 463, 63 S. E. 2d 840; *Finnegan* v. *Finnegan*, 134 W. Va. 94, 58 S. E. 2d 594; *Bennett* v. *Neff*, 130 W. Va. 121, 42 S. E. 2d 793; *Sutton* v. *Sutton*, 128 W. Va. 290, 36 S. E. 2d 608; *Taylor* v. *Taylor*, 128 W. Va. 198, 36 S. E. 2d 601; *Hardin* v. *Collins*, 125 W. Va. 81, 23 S. E. 2d 916; *Shipper* v. *Downey*, 119 W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling*, 118 W. Va. 308, 190 S. E. 537; *Tynes* v. *Shore*, 117 W. Va. 355, 185 S. E. 845; *First National Bank of South Charleston* v. *McCloud*, 112 W. Va. 537, 165 S. E. 799; *Robinson* v. *Robinson*, 112 W. Va. 39, 163 S. E. 633; *Linger* v. *Watson*, 108 W. Va. 180, 150 S. E. 525; *Kincaid* v. *Evans*, 106 W. Va. 605, 146 S. E. 620; *Ramsey* v. *England*, 85 W. Va. 101, 101 S. E. 73. The rule just stated operates and controls in suits for divorce. *Brown* v. *Brown*, 142 W. Va. 695, 97 S. E. 2d 811; *Rohrbaugh* v. *Rohrbaugh*, 136 W. Va. 708, 68 S. E. 2d 361; *Finnegan* v. *Finnegan*, 134 W. Va. 94, 58 S. E. 2d 594; *Sutton* v. *Sutton*, 128 W. Va. 290, 36 S. E. 2d 608; *Taylor* v. *Taylor*, 128 W. Va. 198, 36 S. E. 2d 601; *Hurley* v. *Hurley*, 127 W. Va. 744, 34 S. E. 2d 465; *Smith* v. *Smith*, 125 W. Va. 489, 24 S. E. 2d 902; *Crouch* v. *Crouch*, 124 W. Va. 331, 20 S. E. 2d 169; *Wolfe* v. *Wolfe*, 120 W. Va. 389, 198 S. E. 209; *Arnold* v. *Arnold*, 112 W. Va. 481, 164 S. E. 850. An equally well established rule is that a decree based on conflicting evidence will be reversed when it appears that it is contrary to the preponderance of the evidence or is clearly wrong. *Adams* v. *Ferrell*,

135 W. Va. 463, 63 S. E. 2d 840; *Buskirk* v. *Bankers Finance Corporation,* 121 W. Va. 361, 3 S. E. 2d 450; *Meyers* v. *Washington Heights Land Company,* 107 W. Va. 632, 149 S. E. 819; *Blue* v. *Hazel-Atlas Glass Company,* 106 W. Va. 642, 147 S. E. 22; *Hendrick* v. *Jenkins,* 104 W. Va. 486, 140 S. E. 483. The finding of the domestic relations court that the wife was not entitled to a decree of separate maintenance was not contrary to the preponderance of the evidence or clearly wrong and should have been affirmed and not reversed by the circuit court; and the finding of the domestic relations court that the husband was entitled to a divorce, being contrary to the preponderance of the evidence and clearly wrong, was properly reversed by the circuit court.

There is no merit in the contention of the husband that no appeal from the final decree of the domestic relations court of October 7, 1955, was granted by the circuit court. The petition of the wife for an appeal from the final decree of October 7, 1955, accompanied by the original papers and a transcript of the testimony, was filed by a decree of the circuit court entered November 25, 1955, and the final decree entered by the circuit court April 25, 1956, recites that these consolidated cases were heard and reviewed on appeal which had been previously granted upon due notice, upon the former orders and decrees entered by the circuit court, upon the petition for appeal from the final decree of the domestic relations court entered October 7, 1955, and upon briefs and oral argument of counsel for the respective parties. That decree contains no recital of any objection by the husband to the hearing of the appeal or of any contention by him that the appeal had not been granted or perfected, or of any request or motion by him to dismiss the appeal as improvidently awarded. According to the record the husband entered a general appearance, treated the appeal as having been regularly granted and perfected, and advanced his contentions and presented his defense in the circuit court. Of course, if actually no appeal was granted by the circuit court it would not have jurisdic-

tion to hear and determine these consolidated cases upon appeal and its decrees would be void and of no force or effect. The recital in the final decree of the circuit court that the appeal had been "heretofore granted herein" which is not contradicted by anything shown by the record, however, creates a presumption that the circuit court, a court of general jurisdiction, had jurisdiction of the cases on appeal.

The presumption in favor of jurisdiction of a court of general jurisdiction arises when the record is silent concerning jurisdictional facts. 11 Michie's Jurisprudence, Jurisdiction, Section 24. When the record of a cause shows that a court of general jurisdiction has jurisdiction such record is presumed to be true in that particular, and the judgment, unless successfully assailed for fraud or collusion, is binding until reversed upon appeal or such direct rehearing as may be warranted by law. In *Winding Gulf Colliery Company* v. *Campbell,* 72 W. Va. 449, 78 S. E. 384, this Court said in point 2 of the syllabus that: "Recitals by the orders, judgments and decrees of courts of general jurisdiction that they have jurisidiction of the parties and the subject matter are sustained by presumptions in favor of the regularity of their proccedings." In *Hector Coal Land Company* v. *Jones,* 79 W. Va. 618, 92 S. E. 102, in discussing the effect of recitals in a decree that process had been regularly executed and served upon the defendants, the opinion contains this language: "Whatever may be the general rule, certainly, when not controverted except by an indefinite assertion, recitals of this character in a decree of the court having jurisdiction of the subject matter of the controversy are either presumed to be true or treated as conclusive upon the question of the service of process and the entry and execution of an order of publication." In *Jones* v. *Crim,* 66 W. Va. 301, 66 S. E. 367, the opinion states that, in the absence of any process whatever showing service upon a defendant, a recital in a decree that the defendant had been properly served would be conclusive of proper service. In 1 Michie's

Jurisprudence, Appeal and Error, Section 266, there is this statement: "The presumption that the proceedings in the lower court were regular, in the absence of anything to the contrary in the record, has been applied in many cases." In the opinion in *Dolan* v. *Hardman*, 126 W. Va. 480, 29 S. E. 2d 8, this Court said: "The jurisdiction of the Circuit Court of Jackson County of the parties and the subject matter in the vendor's lien suit affirmatively and clearly appears from the decrees of sale entered therein, and the description of the lands subject to the lien. *Fulton* v. *Ramsey*, 67 W. Va. 321, 326, 68 S. E. 381. Furthermore, nothing to the contrary appearing in the record, there is a presumption of such jurisdiction."

In *Taylor* v. *Taylor*, 128 W. Va. 198, 36 S. E. 2d 601, in concluding that recitals in a final decree of a circuit court that "the cause came on to be heard upon process duly had and executed upon the defendant, as required by law," created a presumption, in the absence of any showing in the record to the contrary, that the defendant was personally served with process in this State, this Court used this language: "This Court has heretofore held that recitals in a decree are a verity and can not be attacked by evidence outside the record. *Central District & Printing Telegraph Co.* v. *Parkersburg, etc., Railway Co.*, 76 W. Va. 120, 85 S. E. 65; *White* v. *White*, 66 W. Va. 79, 66 S. E. 2; *Jones* v. *Crim*, 66 W. Va. 301, 66 S. E. 367; *Darnell* v. *Flynn*, 69 W. Va. 146, 71 S. E. 16. This doctrine, however, has been modified because of the recession by this Court from the verity rule as to the sheriff's return of service of process, where it clearly and convincingly appears that the return is false, to the extent stated by this Court in the case of *Nuttallburg Smokeless Fuel Co.* v. *First National Bank*, 89 W. Va. 438, 109 S. E. 766, and in other subsequent decisions. *Lanham* v. *Home Auto Co.*, 115 W. Va. 415, 176 S. E. 604. Without further discussing the modification of the verity rule since the *Nuttallburg* case as to the force and effect of recitals in decrees and without tracing it to its present

state of development, it is sufficient to say that the principle is well settled by the decisions of this Court that such recitals, though not conclusive, are presumptively correct and will prevail in the absence of record evidence which necessarily contradicts them. *Stepp* v. *State Road Commission,* 108 W. Va. 346, 151 S. E. 180; *State* v. *Bailey,* 85 W. Va. 165, 101 S. E. 169."

This language applies to the recital in the final decree of the circuit court of April 25, 1956. As the record before this Court contains no decree which expressly granted an appeal by the circuit court from the final decree of the domestic relations court and is silent with respect to that matter, the recital in the final decree of the circuit court that an appeal had been granted to the final decree of the domestic relations court, which is not contradicted by anything shown by the record, creates the presumption that such appeal was regularly granted by the circuit court and such presumption will be given full force and effect upon an appeal of these cases in this Court.

The decision of these consolidated cases and the point of the syllabus relating to cruel or inhuman treatment as a ground for divorce are based upon the law governing cruel or inhuman treatment as it existed before the enactment of Chapter 56, Acts of the Legislature, 1957, Regular Session, which amended Article 2, Chapter 48, Code, 1931, as amended, by amending and reenacting Section 4, dealing with cruel or inhuman treatment, and Section 21 of that article, and by adding a new section designated Section 32, for the reason that the cause of action stated in the bill of complaint in each suit arose before the passage of that statute and is governed by the law in force and effect when the acts alleged to constitute cruel or inhuman treatment were committed. Therefore that statute does not apply to or control the decision in either of these consolidated cases. Whether the law relating to cruel or inhuman treatment as it then existed has been modified by that statute is not presented, is of no importance in the final disposition of these cases in

this Court and, in consequence, can not now be considered, determined or discussed.

The final decree of the domestic relations court entered October 7, 1955, insofar as it denies separate maintenance to the wife is affirmed but insofar as it awards the husband a divorce is reversed and set aside; the final decree of the circuit court entered April 25, 1956, insofar as it awards the wife separate maintenance is reversed and set aside but insofar as it denies the husband a divorce is affirmed; and these consolidated cases are remanded to the domestic relations court with directions that it dismiss the suit instituted by the wife for separate maintenance at the cost of the wife and that it dismiss the suit instituted by the husband for divorce at the cost of the husband. The husband having substantially prevailed upon his appeal from the final decree of the circuit court is entitled to recover the costs of the appeal in this Court.

*Decrees affirmed in part*
*and reversed in part;*
*cases remanded with directions.*